IN ERROR.
......

ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

JACKSON, *ex dem.* ABRAHAM HOUSEMAN, and others, Plaintiffs in Error,

*against*

JACOB L. SEBRING and THOMAS CARPENTER, Defendants in Error.

THIS was an action of ejectment brought in the Supreme Court, to recover a lot of land in the city of *New-York.* The cause was tried at the *New-York* sittings, before the late Chief Justice, in *April* 1816. The special verdict stated the following facts : *Andrew Hunt* and *Rachel* his wife, in right of the wife, being seised of the premises in question and other real estate, which came to *Rachel* from her father, *John Houseman,* deceased, who had acquired the same by purchase, on the 28th of *September,* 1805, executed a certain deed or indenture between them of the first part, and *James Davidson* of the second part, as follows : " Whereas, the said *Rachel* has inherited the lands and real estates hereinafter mentioned, *which she wishes to be settled, in the manner hereinafter mentioned:* Now, therefore, this indenture witnesseth, that, *in consideration of the premises, and for divers other good causes and considerations,* the said parties of the first part have granted, bargained, sold, aliened, enfeoffed, conveyed, and confirmed, and by these presents, do grant, bargain, sell, aliene, enfeoff, convey, and confirm unto the said *James Davidson,* his heirs, and assigns, for ever, all and singular, &c. (describing the property conveyed, including the premises in question,) to have and to hold

*H.* a married woman, being seised in fee of certain lands, joined in a deed with her husband, reciting, that she inherited the premises which she wished to settle in the manner thereinafter mentioned; they, therefore, in consideration of the premises, and for divers other good causes, and considerations, granted, bargained, sold, &c. to *D.* (a stranger,) his heirs and assigns for ever, all, &c. in *trust,* to hold the same, during the joint lives of *H.* and her husband, and to pay to them the rents and profits, and in case her husband should die leaving her surviving, then to convey the same to *H.;* but in case *H.* should die, without lawful issue, leaving her husband surviving, then in trust to convey the premises to her said *husband* and to her *mother,* in fee simple, &c. *D.* covenanting to perform the trusts. *H.* died without lawful issue, leaving her husband and mother surviving, to whom *D.* soon after, conveyed the premises, in pursuance of the trust.

*Held,* that the deed from *H.* and her husband to *D.* was void, as a *bargain* and *sale,* for want of . a pecuniary consideration; and that it could not operate as a *covenant to stand seised* to the uses expressed in the deed, because *D.* being *a stranger,* there was no consideration of *blood* or *marriage* between him and *H.,* the grantor. No *use* can be raised on a covenant to stand seised in favour of a stranger, and not of the blood of the covenantor ; and though the covenantee is a mere *trustee* for the *relations* of the covenantor, it makes no difference.

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

all and singular the said several houses, lots of ground, and premises, &c. unto the said *James Davidson*, his heirs and assigns, to his and their only proper use, benefit, and behoof, for ever: IN TRUST, nevertheless, to and for, and upon the several *trusts*, hereinafter mentioned and declared, that is to say ; *in trust*, in the first place, to hold the same *during the joint lives of the said parties of the first part, and to pay the rents and profits thereof to the said parties of the first part, during their joint lives ;* and *in case* the said *Andrew Hunt* shall die leaving the said *Rachel* surviving him, then upon the *further trust*, from and as soon as conveniently may be after his decease, to grant and convey all and singular, the houses, &c. to the said *Rachel*, in fee simple ; but *in case the said Rachel shall die, without lawful issue, leaving the said Andrew surviving her, then..upon the further trust, to grant and convey all and singular the houses, lots of ground, and premises, hereby granted to the said Andrew, and Mary Houseman, the mother of the said Rachel, in fee simple, as tenants in common ;* but if the said *Mary Houseman* shall be dead, at the time of the decease of the said *Rachel*, without lawful issue, leaving the said *Andrew* surviving her ; then, upon the *further trust*, to grant and convey the said several houses, &c. to the said *Andrew Hunt and William Houseman, the uncle of the said Rachel, as tenants in common, in fee simple ;* and the said *James Davidson*, doth by these presents, accept the conveyance in trust, as aforesaid, and doth hereby covenant, and grant to, and with the said *Andrew Hunt*, his executors, administrators and assigns, well and faithfully to perform the trusts herein above declared, he being well and sufficiently indemnified and saved harmless of, from, and against all costs, charges and expenses, which he, the said *James*, shall or may be put to, by reason or on account of the same.   In witness, &c.

This deed was duly executed and acknowledged by the parties.   At the time of its execution, *Rachel Hunt was sick of the yellow fever*, and *died*, on the 29th of *September*, the day following, without issue.

Afterwards, on the 4th of *October*, 1805, *James Davidson*, in pursuance of the trusts declared in the said deed, granted and conveyed the real estate therein described, and the pre-

mises in question, to *Andrew Hunt, the husland, and to*
*Mary Houseman, the mother of the said Rachel,* as tenants in
common, in fee simple, who continued to hold the same, as
tenants in common, until the 17th of *December,* 1805, when
a partition thereof was made between them, and the pre-
mises in question, on that partition, were released and con-
veyed by the said *Andrew Hunt,* to *Mary Houseman,* her
heirs and assigns, in severalty. The defendants in this cause,
who were in possession of the premises at the commence-
ment of the suit, derived their title from *Mary Houseman.*
The lessors of the plaintiff, being the children of *William
Houseman, the uncle of Rachel Hunt, are the only heirs at law
of the said Rachel.*

In *October* term, 1817, the Supreme Court, after argu-
ment of the cause on a case containing the facts as above
stated, gave judgment for the defendants; to reverse which
judgment, a writ of error was brought, returnable to this
court.

The *reasons* for the judgment of the Supreme Court were
assigned by Mr. Chief Justice *Spencer,* who read the same
from the manuscript notes of the late *chief justice,*(a) as fol-
lows : " This was a deed in trust, for certain uses therein ex-
pressed, and is without any pecuniary consideration. It
was, however, contended, on the part of the defendants, that
it was good and sufficient as *a covenant to stand seised to the
uses specified.* The first trust was for the use of the grantors
during their joint lives ; and if *Andrew Hunt* should die, leav-
ing his wife surviving him, then to reconvey the same to
*Rachel;* and in case *Rachel* should die without issue, leav-
ing *Andrew* surviving, then, to grant and convey the lands
to *Andrew Hunt* and *Mary Houseman,* the mother of *Rachel,*
in fee simple, as tenants in common. That event occurred,
and *Davidson* has executed the trust, and conveyed the pre-
mises to *Andrew Hunt* and *Mary Houseman.*"

" It is evident that this deed cannot operate as a *bargain
and sale,* because there is no *pecuniary consideration.* If it

(a) This case was not reported with the other cases in the Supreme
Court, for *October* term, 1817, vol. 14, for want of the necessary notes of
the decision; and a writ of error having been brought, it was not thought
necessary to report it, afterwards.

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

is operative at all, it must be *as a covenant to stand seised.* It is, in form, a bargain and sale ; but this, according to the cases, does not prevent its being a covenant to stand seised, if it contains all the requisites of such conveyance. The great and leading requisite is the *consideration* of blood and marriage ; and it need not appear, in form, to be the consideration expressed ; if that appear from the deed, it is enough. In this case, *Davidson* was made the grantee : he was so, because the deed was in form a bargain and sale ; and the great objection raised to the deed was, that *Davidson* was a *stranger*, and so there was not the requisite consideration of blood, to make the deed operate as a covenant to stand seised. Yet *Davidson* did not, according to the terms of the deed, receive any beneficial interest under the conveyance. He was merely made use of as the conduit or instrument, through which the beneficial interest was to flow to others. Suppose this deed had been, in form, a covenant to stand seised to the uses therein described. *Davidson* would be the covenantee, and his being a stranger would be no objection to the deed. The very precedent of such a covenant is given in the last chapter of *Sanders on Uses and Trusts ;* the covenantee there was a stranger ; and in that chapter of the work of *Sanders*, all the principles which have been suggested will be found to be supported. There certainly appears to be some little confusion in the books on this subject."

" The cases of *Garnish* v. *Wentworth*, (*Carter*, 137.) *Samon* v. *Jones*, (2 *Ventris*, 318.) and *Hore* v. *Dix*, (*Sid.* 25.) would seem to contain principles rather in hostility with this deed. But the authority of those cases is much shaken by the case of *Doe* v. *Salkeld*, (*Wils.* 677.) and that of *Rose* v. *Vroman*. (2 *Wils.* 75.) *Willes*, Ch. J. on referring to those cases, seems to consider them unintelligible, and much questions their authority. They certainly appear against the spirit and tenor of most of the other cases on this point. The case of *Thorne* v. *Thorne*, (1 *Vernon*, 141.) is much in point, so far as it can be collected from the imperfect report of the case ; and it appears to me, from an examination of the cases, that this deed contains all the essential requisites of a covenant to stand seised to the uses described. Although, in form, a bargain and sale, it has all

the words necessary for a covenant to stand seised. The word "*grant*," is enough. Though the consideration of blood or marriage is not expressly alleged, that is to be collected from the deed. Though the grantee is a stranger, no beneficial interest is given to him. He is a mere instrument to convey the premises to the uses specified. We were, accordingly, of opinion, that the defendants were entitled to judgment."

*Foot,* for the plaintiffs in error, contended, 1. That the deed of the 29th of *September,* 1805, was, in its nature, testamentary. The clear intention, deducible from the circumstances under which the deed was executed, and from the recital in it, was to enable Mrs. *Hunt,* a married woman, to *devise* her real estate. It is, in substance, a *will,* made by a *feme covert,* and, therefore, void by the statute. (1 *N. R. L.* 365. sess. 36 ch. 23. s. 5.) A deed takes effect immediately, and the property becomes vested in the grantee. A devise is a disposition of property, to take effect after the death of the testator. In *England,* a married woman can convey her estate by *fine* only. Here she can only convey by a deed duly executed, and acknowledged before a judge or public officer, in the form and manner prescribed by statute. No particular form of words is necessary to constitute a devise. (*Habergham* v. *Vincent,* 2 *Vesey,* jun. 204. *Cruise's Dig.* tit. 38. ch. 9. s. 3—9 ) A deed poll, intended to operate after the testator's death, was held to be testamentary ; and though void, as to the freehold, for want of three witnesses, it passed the copyhold or personal estate. (*Finch's Rep.* 195. 1 *Mod.* 117. 3 *P. Wms.* 27. 3 *Keble,* 310.) Though an instrument be executed and delivered as a deed, yet if it is in the nature of a testament, it will be deemed a testament, and not a deed. The joining of the husband in the deed, or his consent to his wife's disposing of her estate, cannot vary the case. He can give her no power to devise her lands, to the prejudice of the heir at law. (*Cruise's Dig.* tit. 38. ch. 4. s. 6. *Ambler,* 627.)

2. If the deed to *D.,* the trustee, is operative at all, it must be either as a bargain and sale, or as a covenant to stand seised to uses. It clearly is not good as a bargain and

sale, for there is no pecuniary or valuable consideration sufficient to raise a use. *Natural affection* is not a sufficient consideration to support a bargain and sale. (*Cro. Jac.* 127. *Scudamore* v. *Crossing*, 1 *Mod.* 175. S. C. 2 *Lev.* 9. S. C. 1 *Vent.* 137. 2 *Keble*, 754. 784.) As between *Hunt and his wife*, and *Davidson*, there was no consideration of *blood* or *marriage ;* the deed, therefore, could not operate as a covenant to stand seized to uses. In *Roe, ex dem. Wilkinson*, v. *Tranman and others*, (*Willes' Rep.* 682. S. C. 2 *Wils. Rep.* 75.) all the cases on this subject are cited and reviewed, and in none of them has it been held, that there can be a valid covenant to stand seised to uses, without a *consideration of blood* or *marriage*, between the grantor and grantee, the bargainor and bargainee, the feoffor and feoffee, or the releasor and releasee. In the case of *Roe, ex dem. Wilkinson*, v. *Tranmann, T. K.* in consideration of natural love to his brother, *C. K.* and of 100*l. granted* and released to the said *C. K.* after the death of the grantor, and the heirs of his body ; and after their decease, to *John Wilkinson*, (the lessor of the plaintiff,) eldest son of the grantor's well beloved uncle, *J. W.* his heirs and assigns, and to the only proper use of *J. W.* the younger, &c. In answer to the objection that there was not a proper consideration to raise the use, *Willes*, Ch. J. said, the grantor calls the lessor, *J. W.* the eldest son of his well beloved uncle. (4 *Cruise's Dig.* tit. 32, ch. 12. s. 12. 21, 22.)

3. By the deed executed by *Hunt*, and his wife, to *Davidson*, the trustee, no use was raised in favour of *Hunt* and Mrs. *Houseman*, to which the possession could be transferred, by operation of the statute of uses, and thereby, on the delivery of the deed, vest a legal estate in them ; for if it did, *Hunt*, and Mrs. *Houseman*, acquired a legal title to the lands on the death of *Rachel Hunt*, without any deed to them from *Davidson*, the trustee, which could not be, since it would be contrary to the established rules of law, if, by any form of conveyance, the husband and wife could convey the real estate of the wife directly to the husband, or if the wife *alone* could so convey it. *Cruise* cites the case of *Smith* v. *Risley*, (*Cro. Car.* 529.) with approbation, and as good law. There *Paul Risley*, by indenture between him and four

other persons, one of whom was his *brother*, in consideration
of love and affection for his wife and children, covenanted
to stand seised of certain tenements, to the use of himself
for life, remainder to the use of his wife for life, remainder to
the use of the covenantees, and their heirs, upon several *trusts*
for his children; it was decided that the uses were well
raised, and vested in the brother of the covenantor, because
he was of his *blood*, but no use arose to the other covenan-
tees, they being *strangers*.

The case of *Hore* v. *Dix*, (1 *Sid.* 25.) is a still stronger
case, and precisely in point. *J. P.* being seised of land in
fee, by indenture between him, and *T.*, his son, of the one
part, and two strangers of the other part, in consideration
of natural love and affection for his son, granted, and enfeof-
fed the two strangers of the land, to the use of himself for
life, remainder to his son *T.*, and the heirs male of his body,
and remainders over. And he covenanted with the two
strangers, that they should enjoy the land to the uses speci-
fied in the deed. The deed was sealed and delivered, but
there was no livery of seisin, or attornment, so as to render it
a valid *feoffment.* It was, among other things, resolved by the
court, that no estate passed to the two strangers, inasmuch
as the deed was not executed by livery of seisin; and that
no *use* arose to them, because there was no consideration to
raise a use. The case of *Garnish* v. *Wentworth*, (*Carter,*
137.) deserves attention for the very learned argument of
the counsel in the cause, though the question was not there
decided. In *Samon* v. *Jones*, (2 *Ventris*, 318.) all the par-
ties were related, and of the same blood. The deed was to
the son of the grantor, to the use of himself for life, to the
use of his wife for life, then to the use of the son, and the
heirs of his body, and for want of such heirs, to the use of
the grantor's daughter. The case of *Thorne* v. *Thorne,*
(1 *Vernon*, 141.) is so imperfectly reported, that it cannot be
deemed as any authority on this question; (*Com. Dig.* tit. co-
venant, *G.* 2.) but it is stated, that there was an express co-
venant, that the *cestuy que trust* should enjoy. *Sanders,*
(vol. 2. p. 94.) in his treatise on *Uses*, says, that as a use can-
not arise to a person who is a stranger to the consideration,
therefore, if a man covenants to stand seised to the use of

IN ERROR.
.......

ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

himself for life, remainder over to his relations, with a power for the tenant for life to make leases, this power is void in its creation. This is a principal reason why covenants to stand seised are fallen into disuse." But where the conveyance is by *lease* and *release*, the releasor may reserve to the tenant for life, or in tail, a power to lease, or to make a jointure, which will take effect, by way of limitation of a use, out of the original seisin of the releasee. There was no legal estate acquired by *Davidson*, and the trusts must fail the contingent remainders, or future uses, can only be preserved by means of the seisin, or estate of the feoffee, and the consideration of blood, or marriage must pass between the covenantor and the trustee, or covenantee. (*Comyn's Dig. Uses*, (*H.*) *Sanders on Uses, Covenant to stand seised*, &c.) If the particular estate is void, before the contingent remainder vests, the estate in remainder must fail. A *cestuy que trust* can acquire the property only by a conveyance from the trustee; and, accordingly, in this case, *D.* the trustee, conveyed to *Andrew Hunt* and *Mary Houseman.*

It is said, that *Davidson* was a mere *conduit*, through which the *beneficial* interest was to flow to the *cestuy que trusts.* But *Davidson* took no estate; and there must be a *seisin* in the trustee to preserve future uses, or contingent remainders. He was not such a *conduit pipe* as would give effect to these contingent uses. (*Chudleigh's case*, 1 *Co.* 127. 1 *Dickens*, 183. *Garth* v. *Cotton*, 2 *Cruise Dig.* tit. 16. ch. 7. s. 24.)

*Wells*, and *T. A. Emmet*, contra. The facts disclosed in this case strongly recommend the defendants to the justice and favour of the court. They claim under the voluntary act of the rightful owner of the property; the *objects* of whose bounty, as declared in this deed, were most meritorious, her *mother* and her *husband.* The lessors of the plaintiff are distant heirs at law.

The question in this case is as to the validity and legal operation of the deed.

The *first* objection to it is, that it is a *will*, and being executed by a *feme covert*, is void. But it is not a will, either in form or substance; nor was it intended so to be. All the cases cited to show, that instruments wanting the form of

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

,wills, have nevertheless been adjudged to be wills, are those in which courts, in order to carry into effect the *intent* of the persons making them, have *benignly* construed them to be wills. The *benignity* of the law considers them wills, merely from necessity, in order to prevent the intent of the party from being defeated. But, in this case, the court is called upon to construe a deed, manifestly not a will, to be such, not to carry into effect the intent of the grantor, or to give legal operation to the deed, but to defeat both the intent of the maker, and the operation of the instrument. This would be a perversion of the benignity of the law to the purposes of injustice.

It is a deed intended to *pass the estate of Rachel Hunt*, according to its provisions; and although a *feme covert* cannot make a will, she may execute a deed of her real estate. This deed was executed and acknowledged with all the formalities required by the statute. It imports to be a conveyance to *D.* in fee, to hold on certain specified trusts. If *D.* took the estate under the deed, the trusts have been executed.

It is objected, however, that no *use*, or, in other words, no estate passed to *D.*, and that, therefore, he could not convey any, the deed itself being void. Conveyances of real estate are such as take effect by the common law, or under the statute of uses. By the former, as by feoffment, &c. there was an actual transmutation of possession; by the operation of the statute, the possession is transferred to the use. Uses are raised, where there is no actual change of possession, in two ways: 1. By a deed for a valuable or pecuniary consideration; 2. By a deed for a good consideration, as blood or marriage. The first operates as a *bargain and sale*, the consideration raising a *use* to the bargainee, which is *executed* by the statute; the second as a *covenant to stand seised*, which raises the use to the person intended to be benefited; and uses of this kind are either *vested*, or *springing and shifting* uses, which become vested as they arise.

If a dollar, or a cent, had been inserted in this deed, as received by the grantors from the trustee, though nothing, in fact, were paid, no question could have arisen as to its being a good and valid conveyance; and upon this omission, the

lessors of the plaintiff found their claim. Although a single cent would have extinguished every pretension of right, yet they now assert it, as if it were intrinsically just and meritorious.

It is an ancient, and well established rule of law, that a deed should never be set aside, as void, if, by any construction, it can be made good. (*Hob.* 277. *Shep. Touchst,* 82, 83. 2 *Saund.* 97. n. 1.) Admitting, however, that as there was no consideration of *money*, or of *blood*, between the grantors and *Davidson*, and that, therefore, no use or estate became vested in him; the deed is not, therefore, void, for the seisin continued in Mrs. *Hunt*, subject to the uses declared in the deed; and it is equivalent to a covenant to stand seised to the uses expressed. Deeds founded on consideration of blood or marriage, or for the settlement of property, have, at all times, received a benign and liberal construction; and where they operate as a feoffment, grant, bargain and sale, &c., they have always been held good as a covenant to stand seised. No formal words are necessary to create such a covenant. The word *grant* is, of itself, sufficient. (*Osman* v. *Sheafe,* 3 *Lev.* 370. *Carth.* 307. S. C. *Crossing* v. *Scuddamore,* 1 *Mod.* 175. 1 *Ventr.* 137. 2 *Lev.* 9. 2 *Saund.* 96. note 1. and the authorities there cited.)

The *words* of the deed being sufficient, the next inquiry is as to the *consideration.* The *intent* of Mrs. *Hunt,* was to settle the estate upon her *mother* and *husband,* and, contingently, as to one half, upon the father of the lessors. The consideration need not be expressed. It is enough that the person who is to take the estate, is described as the *relation* of the grantor; and some of the cases show, that the *relationship* may be proved. (*Bedell's case,* 7 *Co.* 39. *Harper's case,* 11 *Co.* 23. *Mildmay's case,* 1 *Co.* 175. *Shep. Touchst.* 508. 510. 512, 513. 516.) But it is objected, that this consideration must proceed from the *grantee;* and *D.* in this case, being a *stranger,* no use could be raised in favour of the mother and husband of the grantor. If the uses are to arise out of the estate of the grantee, we admit that he must have such a seisin as will serve the uses declared. But here the seisin remained in the grantor, and the uses are

raised out of the estate of Mrs. *Hunt*, in whom the seisin IN ERROR.
continued.

ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

It is objected, that where the deed is, in *form*, different from a covenant to stand seised, it is not turned into a covenant to stand seised, unless the *grantee is of the blood of the grantor*, or there is an express covenant that the *cestui que use* shall stand seised.

Such a distinction is not supported by any sound principle or authority. If a formal covenant with a *stranger*, to stand seised to the use of the blood relation of the covenantor be good, why should not a *deed* to a stranger, who, in order to give it effect, becomes a mere covenantee, be equally good? In the first case, the *cestui que use* is the moving consideration with the grantor. If a deed is turned into a covenant to stand seised, it must have the same effect, and partakes of all the qualities of such a covenant, unless restrained by some express exception or qualification.

The cardinal rule in construing instruments of this nature is, as in the case of wills, to look to the *intention* of the grantor, and for nearly the same reasons, both being intended for family provision. " The *intention* of the parties is," says Lord *Coke*, " the principal foundation of the creation of uses :" (2 *Inst.* 672. *Bedell's case*, 7 *Co.* 40.) And *Hobart* says, " I did exceedingly commend the judges that are curious and almost subtle, *astuti*, to invent reasons and means to make acts according to the intents of the parties, and to avoid wrong and injury which, by rigid rules, might be wrought out of the act." (*Clanrickard's case, Hob. Rep.* 277.) *Willes*, Ch. J. (*Doe, ex dem. Milburn*, v. *Salkeld, Willes' Rep.* 673.) observes, that this advice of Lord *Hobart* had been taken notice of by the judges, and referred to in many of the cases of covenants to stand seised, as an excellent rule to go by, and he thought that they could not observe a better. *Levinz* (3 *Lev.* 372.) says, the judges in these later times have had more consideration for the intent to *pass the* estate, which is the *substance* of the deed, than the *manner* of passing it, which is the *shadow*. (*Vide* also, *Sleigh* v. *Metham*, 1 *Lutw.* 782.) Yet in this more enlightened age of jurisprudence, the court are urged by the plaintiff's counsel to look at the *shadow*, and disregard the *sub-*

IN ERROR.
.......
ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

stance. The intent of Mrs. Hunt, to pass this estate to her mother and husband, is most clear; but she mistook the technical manner, by neglecting to insert a consideration of one dollar, as paid by Davidson. If the deed, then, cannot stand good as a bargain and sale, will not the court look to the intent, and permit the estate to pass, by way of a covenant to stand seised?

It is objected further, that the estates to the mother and husband of the grantor are contingent remainders, and the trustee, being a stranger, took no legal estate to support them. But it is a mistake to call these estates contingent remainders. They are springing and shifting uses, growing out of the seisin of Mrs. Hunt, and becoming vested as the contingency happens, on which they are to take effect. The seisin of the grantor is sufficient to support the uses as they arise.

On sound principles, therefore, and according to natural justice, the defendants are entitled to the estate; and the weight of authority is in their favour. The cases of Hoare v. Dix, and Samon v. Jones, on which the plaintiff so much relies, cannot be reconciled with each other, and with the principles for which the plaintiff's counsel contend. But the decision in these cases met with the strong and decided disapprobation of Ch. J. Willes, and were virtually overruled by him. (Doe v. Salkeld, and Roe v. Tranman, Willes Rep. 672. 682.) The case of Hoare v. Dix, was founded on Co. Litt. 49. which Ch. J. Willes says, was a mere dictum of Lord Coke, and had not been observed for an hundred years. In Garish v. Wentworth, the grant was to a stranger, and though elaborately argued, and now referred to for its learning, the objection relied on by the plaintiff was not taken. And 1 Co. 175. 11 Co. 23. Str. 934. 1 Vernon, 141. Shep. Touchst. 512, 513, are authorities strongly in favour of the defendant. (Doe v. Whittingham, 4 Taunt. 20. 4 Mass. Rep. 135. 7 Mass. Rep. 381.)

Foot, in reply, said, that remainders are as well created by conveyances to uses, as by those which derive their effect from the common law; and where they are created without any transmutation of possession, the seisin of the

covenantor or bargainor will feed the future or springing IN ERROR.
．．．．．．．
ALBANY,
January, 1819.
JACKSON
v.
SEBRING.
uses. But as these uses or future estates may be defeated
and destroyed by the covenantor or bargainor conveying
away the estate, before the event happens on which the re-
mainder is to vest, this deed was, substantially, revocable.
(2 *Cruise Dig.* 345. 355. 369. 372. tit. 16. ch. 6.) In all
the cases collected by *Serjeant Williams*, in the note to
2 *Saund.* 97. n. 1. the covenantee or bargainee was a per-
son of the *blood* of the covenantor or bargainor. There is
not a single case to be found in which a bargain and sale
has been construed to be a covenant to stand seised, in which
the grantee was not of the blood of the grantor. Here the
grant is to *Davidson*, a mere stranger.

THE CHANCELLOR. The facts in this case are few and
simple.

*Rachel Hunt*, the wife of *Andrew Hunt*, was seised in fee
of certain houses and lots of land in the city of *New-York*.
She inherited this real estate from her father, who had ac-
quired it by purchase. She died without issue, on the 29th
of *September*, 1805, and the plaintiffs in this suit are her
heirs at law, being the children of her father's brother, who
was her next immediate heir, and who died subsequently to
her. These children of her uncle would have a clear and
unquestionable title to the estate, if the deed executed by
Mrs. *Hunt*, on the day preceding her death, did not interpose
to bar them. The case then turns entirely upon the legal
operation of that deed.

When Mrs. *Hunt* made the deed, she lay sick of the yel-
low fever, and she died the day after she had executed it.
The deed secured the use of the property to her, and her
husband, during their joint lives, and absolutely to her, in
case she survived her husband. It was a deed not intended
to affect the estate, until the death of her, or her husband;
and from that circumstance, and from the fact that the deed
was made when she lay upon her death-bed, we are war-
ranted to conclude, that the deed which she had the power
to make, was a substitute for a will which she had not the
power to make. We may, therefore, look upon it as a deed
intended to supply the place of a will, and made purposely

in avoidance of the statute of wills. Whether it be reasonable or useful, to except married women out of the statute of wills, may be a question. As a court of justice, however, we have nothing to do with the expediency of the statute, or with the inconsistency of the law, which forbids a married woman to make a will, and allows her, even in her last moments, to make a deed. As judges, we are not to make, or unmake the law; we are only to declare it as we find it; and without taking any interest in this family struggle between the claimants, under the deed, and the claimants as heirs, I shall now proceed to examine the deed upon the strict principles of law; and if it will stand that test, we must affirm it; and if it will not, we must reject it.

This deed was intended as a conveyance by bargain and sale, in fee, to *James Davidson,* upon certain trusts therein declared. But it is agreed, that the deed is not good by way of bargain and sale, for want of a pecuniary consideration. There is no dispute about this rule. If the deed operates at all, it must operate by way of covenant, to stand seised to uses, and that species of conveyance is good when made upon the consideration of blood, or marriage. Thus, *if a man covenants that he will stand seised of land to the use of his child, or wife, or brother,* or other relation, the statute of uses transfers the title to the use appointed, and whether any consideration be expressed or not, if the parties be of one blood, the law implies a good one arising from *the natural love and affection between the parties.* (Lord *Bacon* on *the Use of the Law,* p. 151. *Goodtitle* v. *Petto, Str.* 934.)

The deed considered as a covenant to stand seised, is a deed to *James Davidson,* upon trust, and the character of this grantee creates the great difficulty in the case. The consideration of natural love and affection is founded upon the ties of blood, or marriage; and it is conceded, that here no such tie existed between *Hunt* and his wife, on the one part, and *Davidson* on the other. *Davidson* was what the law calls a stranger, unconnected by blood or marriage; the deed would seem then to fail, as a covenant to stand seised, from the want of a good consideration, in like manner, as it failed as a deed of bargain and sale, from the want

of a money consideration. The object of the deed was to IN ERROR.<br/>▪▪▪▪▪▪▪<br/>ALBANY,<br/>January, 1819. vest the title in *Davidson*, as a trustee for the family, and the question is, whether this deed, in any view of it, can execute that intention, consistently with principles of law.

JACKSON<br/>v.<br/>SEBRING.

One of the earliest cases on this subject, of a covenant to stand seised, in which the covenant was with a stranger, is Lord *Paget's* case, in 31 and 32 *Eliz*. (1 *Leon*. 195. 1 *Co*. 154. a.) Lord *Paget* there covenanted with *Trentham and others*, that he would stand seised to their use, for the term of 24 years, and then to the use of his son in tail; and it was held, that the term was void, because there was no consideration to raise an use, as *T*. and others were strangers to the consideration of blood.

The same point was decided in *Wiseman's* case, in the 27th of *Eliz*. (2 *Co*. 15.) The party there, in consideration that his lands should continue in his family name and blood, and for other good considerations, covenanted that he would stand seized to the use of himself and of his heirs male of his body, and after, to the use of his brothers in tail, and for default of such issue, to the use of the queen, her heirs and successors. In this case the Court of Common Pleas resolved, that no use was raised to the queen, because there was no pecuniary consideration, and the consideration of blood did not apply to the queen.

We have here two strong and ancient cases showing that no use can be raised on a covenant to stand seized in favour of a stranger not connected by blood. And with what firmness did the Court of C. B. maintain the rule, even under the reign of *Elizabeth*, though the doctrine went to defeat a use raised in favour of that arbitrary princess?

But those two cases do not come closely to the point now under discussion. The stranger in those cases was intended to take a beneficial interest under the conveyance, *upon his own account*, whereas, in this case, *Davidson* was to take only as a trustee for the family. The next case, then, in the order of time is, *Smith v. Ridley*, (*Cro. Car*. 529. *Wm. Jones*, 418. 2 *Roll. Abr*. 783. pl. 4. S. C.) which was in the 14th of *Charles* I., and which does not come quite up, in principle, to the case before us. The case was this : a man by indenture between him and four others, (of whom one was

his brother, and the other three were strangers,) covenanted, in consideration of love and affection for his wife and children, to stand seised to the use of himself for life, and then after his death to the use of his wife for life, and then to the use of the four covenantees in fee, in trust, that they should apply the rents and profits to raise portions for his younger children, and then to the use of his son and the heirs of his body. After the death of the grantor, the three covenantees, who were strangers, sold the land, by deed, to the covenantee, who was the brother, to the intent that he should perform the trusts, and the question was, whether the covenant to stand seised was valid, seeing that all the covenantees, except one, were strangers in blood to the covenantor. This question was argued several times at the bar, and the Court of K. B. decided that the uses were well raised, and vested solely in the covenantee, who was a brother, because he was of the blood; but that they were not well vested in the other covenantees, and no estate passed to them because they were strangers, though the estate was limited to them in trust to raise portions for other persons.

This case is cited by Baron *Gilbert*, in his *Treatise on Uses*, as a good authority; and Mr. *Sugden*, in his late and valuable edition of that work, (*Gilbert on Uses, by Sugden*, p. 247. *note*,) says, that if the covenantees had all been strangers, no use would have arisen, " although limited for the benefit of the blood or family of the covenantor, and not for collateral purposes."

This case appears to me to be in point. None of those strangers could take, even in trust for the children of the covenantor; and had not one of them, fortunately, been a brother, no use could have arisen. In the present case, here is a regular conveyance, by bargain and sale, to *James Davidson*, in fee, in trust for family purposes. The deed is void as a bargain and sale, and if we construe it as a covenant to stand seised, it is then a covenant with a stranger to stand seised to the use of the stranger, in trust, that the stranger shall hold and apply the land for the uses declared in the deed. But the misfortune is, that *Davidson* the stranger, stands here alone, and by himself. Here is no brother to redeem the deed. According to the decision in

IN ERROR.
......

ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

*Cro. Car.*, and which appears never to have been question-
ed, the use fails for want of a covenantee, who is a relation
by blood or marriage. In the opinion given by the Supreme
Court, it is said that *Davidson* was merely made use of as
the conduit or instrument, through which the beneficial inte-
rest was to flow to others. But that was also the case in *Smith*
v. *Risley.* The covenantees there were only to take in
trust for the family of the covenantor. They were the
mere conduits or instruments, and yet the case says, those
who are strangers, and not connected by blood, cannot be
such instruments. Why the courts originally established
so scrupulous a rule, it is not for me to say. I can only say,
that a covenant to stand seised is a peculiar species of con-
veyance, confined entirely to family connections, and found-
ed on the tender consideration of blood or marriage. No
use can be raised *for any purpose*, in favour of a person not
within the influence of that consideration. There is no
cold, selfish, calculating motive to contaminate the contract,
nor is the conveyance to be profaned by the footstep of a
stranger.

The case of *Sympson* v. *Keyles*, decided in 1657, was
cited in *Foster* v. *Foster*, (*T. Raym.* 49.) and it contains the
same doctrine. A father had by deed given land to his son,
in consideration of affection, but livery was not made, and
it was held good as a covenant to stand seised. But " a
difference was taken, where the father gives to a stranger, to
the use of himself, remainder over ; there no use arises ; but
when the conveyance is to the party himself, there the use
will arise."

The next case in succession, is that of *Hore* v. *Dix,*
(1 *Sid.* 25.) of which we have heard so much upon the argu-
ment. That case was decided in the C. B. very early in
the reign of *Charles* II., One *J. P* , by indenture between
him and *T.*, his son, of the one part, and two strangers of
the other part, in consideration of natural love and affec-
tion which he had to his son *T.*, granted and enfeoffed the
two strangers of lands, to the use of himself for life, remain-
der to his son *T.* and the heirs male of his body, with re-
mainders over. He also covenanted with the two strangers
that they should enjoy the land to the uses in the deed spe-

IN ERROR.
......
ALBANY,
January, 1819.

JACKSON
v
SEBRING.

cified. The deed was not duly made so as to operate as a feoffment, and the question was, whether the son took under the deed as a covenant to stand seised The court decided, that no use was raised by the deed, seeing there was no consideration to raise it, it being a deed to strangers. This is also a case in point against the deed before us, for the deed was to the two strangers for the entire use of the covenantor and his son, and they took no beneficial interest, any more than *Davidson*, in the present case.

The next case that is material to this point, is *Jackson* v. *Jackson*, in the 4 G. II. (*Fitzg.* 146 ) in which *A.* being seised of lands, conveyed the same by feoffment, to feoffees, to the use of himself for years, remainder to his wife for life, remainder to his sons in tail. The deed was defective for want of livery. The counsel for the defendant said, that the deed could not have the effect of a covenant to stand seised ; for the trustees being strangers in blood to the grantor, no use could arise to them. And the Lord Chancellor (*King*.) said, he was of opinion the deed could not enure as a covenant to stand seised, for the same reason. A similar case arose in Chancery, at the very same term, in *Nugent* v. *Hancock*, (22 *Viner*, 196. pl. 13.) *A.*, by voluntary deed, covenanted with *B.* and *C.*, who were strangers, to stand seised to certain uses, and upon certain trusts. It was objected, that the plaintiff, who claimed as a grandson, could have no benefit under the settlement, for that the trustees being strangers to the consideration of blood, no uses arise to them, according to Lord *Paget's* case, and of this opinion was the Lord Chancellor. It was then suggested, that there might be a difference, where the estate, trust, or use in the trustees, was limited for the benefit of the blood and family of the covenantor, and where for other purposes ; but no such distinction was allowed, and the bill was dismissed.

We have thus traced a series of cases, from the 31 *Eliz.* down to the 4 of *Geo.* II. all speaking the same general language, and declaring, that a stranger, whether he takes any beneficial interest or not, cannot be a party to a covenant to stand seised, because it is a family conveyance, and is founded on the consideration of family affection.

IN ERROR.
.....
ALBANY,
January, 1819,
JACKSON
v.
SEBRING.

We will next examine, and see whether there be any cases to destroy, or essentially to weaken the force of these authorities.

The first case to be noticed. is *Thorne* v. *Thorne*, (1 *Vern.* 141.) in 1682, in which a man had, by indenture, granted, enfeoffed, and confirmed his land unto trustees, to stand seised to the use of his three brothers. But the deed not being duly executed as a feoffment, the Lord Keeper decreed, without any difficulty, that it should work as a covenant to stand seised.

This is all we have of the case, and it is a very brief note. It does not appear, that the question as to the competency of the trustees, was raised, nor does it appear, whether or not they were strangers. They might have been persons embraced by the consideration of blood. The case, therefore, as it stands, proves nothing, one way or the other, as to the point in question. And can we suppose that the Lord Keeper would not have paused, at least, had these trustees been strangers, and had the point been raised, when we consider the decision in *Hore and Dix*, made in the same reign, by no less a judge and master of the doctrine of conveyancing, than Sir *Orlando Bridgman*, the Chief Justice of the C. B. ? It is further to be observed, that in the two subsequent cases in Chancery by Lord Chancellor *King*, no reference is made to this decision; yet those two cases are in direct opposition to what is supposed by the counsel for the defendants in error, to be the doctrine in this case. It is most apparent, therefore, that this case of *Thorne* v. *Thorne*, is not, and has never been regarded as any authority in favour of a covenant to stand seised to the use of a stranger.

But there are two cases later than any which we have been reviewing, and decided by Ch. J. *Willes*, in 1755 and 1757, which are supposed to affect the authority of the decisions in favour of the plaintiff.

In *Doe* v. *Salkeld*, (*Willes' Rep.* 673.) the lessors of the plaintiff, claimed under a deed of settlement made between *A.* of the first part, *B.* of the second part, and *C.* of the third part. By this deed, *A.*, in consideration of a marriage then intended between him and *B.*, and for a jointure and provision for her, granted and released to *B.* and *C.* certain

IN ERROR.

ALBANY,
January, 1819.

JACKSON
v.
SEBRING.

lands to hold to the use of *B.* for life, and in bar of her dower, then to the heirs of her body, and then to his own heirs. The marriage took effect, and *A.* and *B.* died, leaving an only child, and the deed was held to be a good covenant to stand seised. Lord Ch. J. *Willes,* in order to take the case out of that of *Hore* v. *Dix,* said, that the conveyance here was not to a stranger, and it was a grant in consideration of marriage. Who *C.,* the person associated with *B.* in the deed, as one of the covenantees, was, does not appear. Being of the same name, it was probably a brother of *B*: at any rate, it is sufficient for the present purpose, that the court say, that the conveyance there was not to a stranger. And if *C.* had been a stranger, yet the competency of *B.* the intended wife, was enough, according to the case of *Smith* v. *Risley.* If any one covenantee be of the family, it is sufficient.

The other case cited from *Willes'* Reports, is *Roe* v. *Tranmer.* (*Willes'* Rep. 682. 2 *Wils.* 75. S. C.) The question there was, whether a lease and release, being made to convey an estate in tail, to commence *in futuro,* could operate as a conveyance at common law, and the court held it could not; but they were of opinion it could take effect as a covenant to stand seised. The lease and release here, were from *A.* to his brother *B.* in fee tail, in consideration of natural love, and *after his own death,* to have, and to hold to his brother, and the heirs of his body, and after their decease, to the eldest son of his beloved uncle.

This case has nothing to do with the present one, for here all the parties to the deed were of the same family, and of one blood. So they were in the cases of *Samon* v. *Jones,* (2 *Vent.* 318.) in *Daw* v. *Newborough,* (*Comyn's* Rep. 242. *Gilbert on Uses,* by *Sugden,* p. 253, 254. S. C.) and *Crossing* v. *Scudamore,* (1 *Vent.* 137.) which have been supposed to have some bearing upon the point, but which have no application to the question whether the covenantee can be *a stranger,* in a deed of covenant to stand seised to uses. After the fullest research which I have been able to give, I cannot find a single case in which it has ever been decided, that these family uses can arise on a covenant, or grant to a stranger, whether he is to take beneficially, or only as a

mere trustee for others. All the cases I have produced from the reign of *Elizabeth* down, and which deny that a stranger can be a party to such a conveyance, remain uncontradicted. If there be even any *dicta* in favour of the competency of a stranger to take, they have been overruled. Thus, in *Plowd.* 307. b. it was said, by one of the counsel, that a use in a particular estate might be raised, and supported in favour of a stranger, when there was a remainder over in favour of the family. But this was denied to be law by a subsequent *dictum* of counsel, in 4 *Leon.* 137. ; and it was exploded in Lord *Paget's* case.

The intention of the deed, in the present case, was, that the estate in law should pass to *Davidson*, and that the uses and trusts in favour of the husband and mother should arise out of the estate so vested in him. But no estate vested, whether we consider the deed as a bargain and sale, or as a covenant to stand seised, from the want of a pecuniary consideration in the one case, and of the consideration of blood or marriage in the other. I should be willing to lend a helping hand to this deed, if I could find any law to warrant it; but I have found none, and I am obliged to say, that the heirs are entitled by law to the land. Though the rule of law may appear to be a formal and technical one, yet a great many of the rules of evidence are of the same stamp; and the courts must adhere to them, or they will destroy landmarks, render the transmission of property uncertain, and throw every thing into confusion. We have no more authority to change the rule of law, in order to give effect to a covenant to stand seised, than we would have to give effect to the common deed of bargain and sale, without any consideration in it, or to give effect to a deed of feoffment without livery, or to a bond without a seal, or to a will of land which has not three witnesses, or to make a note negotiable without negotiable words in it. All these, and numerous other cases, depend upon fixed rules not within the discretion of the courts; and it would produce great mischief, if not great injustice, if any of these rules were to be subverted retrospectively.

Perhaps, the husband, and especially the mother, may have more pressing claims than uncles and cousins; but

IN ERROR. the fixed laws of inheritance which have prevailed from
••••••   time immemorial, speak a different language.   Real proper-
ALBANY, ty never can, in any possible case, ascend, by inheritance, to
JACKSON  the mother; nor will the law allow the husband to be the
v.       wife's heir, as to her lands and it only gives him a life estate,
SEBRING. as tenant by the curtesy.   Suppose Mrs. *Hunt* had left
children, by a former husband, and the second husband had
procured such a deed as this, from his wife, in her last sick-
ness; it is probable that every one would have been struck
with the enormity of the case, and we should gladly have
seized upon this settled rule of law to have restored the
land to the children.     The plaintiffs, in the present
case, are not such interesting heirs as one's own offspring,
but still they are *the heirs at law*, and they are entitled
to ask of us to give them their right, according to the esta-
blished, uniform, and unbending rules of law.    If husbands
can procure the conveyance of property from their wives,
by honest and fair means, let them do so and welcome,
but they cannot expect that the courts will help them, as
against the heirs, in their precipitation and blunders, and go
so far as to suspend or change the doctrine of alienation by
deed.

I am, accordingly, of opinion, that the case is with the
plaintiffs, and that the judgment of the Supreme Court
ought to be reversed.

*March* 26.    A majority of the court(*a*) being of the same opinion, it
was thereupon ORDERED and ADJUDGED, that the judgment
of the Supreme Court be reversed, and that the plaintiff in
error be restored in all things he has lost thereby.   And it
is further ORDERED and ADJUDGED, that the plaintiff in error
do recover against the defendants in error, his said term yet
to come, &c. and his damages to six cents, &c.

And it is further ORDERED and ADJUDGED, that the de-
fendants in error pay to the plaintiff in error one hundred
and seventy seven dollars and fifty-five cents, for his costs
and charges by him laid out and expended in the Supreme

(*a*) For *reversing*, 14: for *affirming*, 6.

Court, &c. as well as in and about the prosecution of his writ of error in this court, and that the record be remitted, &c.

Judgment of reversal.