## Case No. 5,630.

### GOSHORN v. ALEXANDER et al.

[2 Bond, 158.][1]

Circuit Court, S. D. Ohio. Feb. Term, 1868.

DECEDENT'S DEBTS—DORMANT JUDGMENT — SUIT ON APPEAL BOND—RETURN OF SHERIFF —OHIO CODE OF 1853.

1. Under the statutes of Ohio, the widow and heirs of a deceased person, who are the recipients of property from the estate, are liable for his debts to the extent of such property, under the conditions and limitations of the statute.

2. The courts of the United States take cognizance of cases to enforce remedies given by a state statute, where the plaintiff who sues is a citizen of another state.

3. Suit was brought, in 1867, on an appeal bond executed in 1839, under the provisions of the statute of 1831 regulating judgments and executions which provided "that in all cases where judgment shall be rendered in the supreme court against the appellants . . . the successful party shall, before he brings suit on the appeal bond, issue execution against the principal debtor," etc. Held, that said provision was repealed by the Code of Ohio which took effect in 1853, yet being in force when the appeal bond was executed, it is the law of the contract, and applies to all bonds dated before the adoption of the Code.

4. The Ohio statute of 1831 makes it a condition precedent to the right to sue the surety in an appeal bond, that it shall appear by the return upon the execution that the principal in the bond had not property sufficient to satisfy the execution, and this court can not give it a construction in conflict with this requirement.

5. The statute referred to provides that an action on the appeal bond shall be barred after one year from the return of the execution that the principal has no property. Where an execution was issued against the principal on a dormant judgment by complainants, such execution and the return thereon were not nullities; they are voidable but not void.

6. A sheriff made the following return upon an execution: "Received this writ April 19, 1856, at four o'clock p. m., and on examination I find that the lands within described have all been sold under a proceeding in favor of Robert Boyd, in the court of common pleas, against the defendants and others; and as to the command for further levy, I have made search, and can find no property of the defendants, or either of them, in my bailiwick whereon to levy." Held, that it sufficiently appeared by the return upon the execution, that the defendants had not sufficient property to satisfy the writ.

7. A sheriff is protected from liability in obeying the command of an execution on a dormant judgment, and his proceedings can not be collaterally impeached, especially by the person at whose instance they have been commenced.

In equity.

John W. Okey, for complainants.

B. S. Cowan, for defendants.

OPINION OF THE COURT. The complainants' [John and William Goshorn], citizens of the state of West Virginia, have filed this bill against Jane Alexander, as the widow of James Alexander and seven others, his heirs at law, citizens of the Southern district

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

of Ohio, charging their liability to a debt, alleged to be due to the complainants, as the recipients and distributees of the estate of said James Alexander. The case is before the court on the bill and answer, and the exhibit and testimony. As to the material facts, there is no substantial controversy between the parties, and the questions arising are therefore mainly on the construction and legal effect of the facts. The facts are, in substance, that in September, 1839, the complainants recovered a judgment against J. and A. Sinclair, in the common pleas of Monroe county, for $2,589.64; from which judgment the said Sinclairs appealed to the supreme court, and executed an appeal bond, in which the said James Alexander was the surety. The condition of the bond was in conformity with the statute then in force, that the obligees should faithfully pay the amount that should be adjudged against the defendants in the supreme court. In October, 1839, judgment was entered against the Sinclairs in the supreme court for the same amount as in the common pleas; and upon the mandate to that court, execution issued on the judgment in the spring of 1840. Without noticing specially all the executions issued, with the returns made on them, and other intermediate proceedings, it will be sufficient to state, that between the date of the first execution and the month of August, 1856, various other executions issued, on which money was made, from time to time, still leaving a balance due on the judgment against the Sinclairs. The amount claimed as due when this bill was filed, including interest, is stated to be about $4,000. James Alexander died in 1841, and his widow, the said Jane Alexander, was appointed his administratrix. She made a final settlement of the estate in 1846, and no property or assets to be administered have come to her hands since. The claim of the complainants on the appeal bond has never been presented to the administratrix or allowed by any court. It is averred in the bill, that the judgment against the Sinclairs, having become dormant by the failure to issue execution, was revived in 1865, and that an execution afterward issued was returned no property found whereon to levy; and that until that return, no return of any execution against the Sinclairs showed they had not sufficient property to satisfy the judgment. It is also averred in the bill, and substantially admitted by the answer, that the defendants, as the widow and heirs of James Alexander, the surety in the appeal bond, received as such some real estate, and were also the distributees of a small amount of money, the proceeds of the personal property remaining in the hands of the administratrix after her settlement. There is some discrepancy between the averments in the bill and the answer as to the value of the real property which descended to them, and the amount received from the administratrix. This, however, does not affect the question of the legal

liability of the defendants, and does not here require further notice.

The ground on which the liability of these defendants is insisted on is, that there was at the time of the filing of this bill a valid and subsisting debt due to the complainants from the estate of James Alexander, the surety in the appeal bond, which was not presented, and could not have been presented to his administratrix, while acting as such; and that his widow and heirs are liable for such debt to the extent of the property received by them from the estate of said Alexander. That under the statutes of Ohio, which must control this question, the widow and heirs of a deceased person, who are the recipients of property from the estate, are liable for his debts to the extent of such property, under the conditions and limitations of the statute, is not disputed and can not be doubted. Such has been the law in Ohio, either by statutory provision or otherwise, from the first organization of the state. The act of 1850 relating to executors and administrators distinctly provides such a remedy. Sections 232 and 233 of this act (Swan & C. Ohio St. 610) declare, in substance, that a creditor after the settlement of a deceased debtor's estate, and after the expiration of the time limited for the commencement of an action against the executor or administrator, shall have a remedy against the widow, heirs, devisees, or legatees of the decedent to the extent of property received by them, if no suit could have been brought against the executor or administrator, or for which no other provision is made by law. The right to sue in such case is limited to one year after the cause of action accrued. And by section 235, if more than one person is liable, the proceeding by the creditor shall be by bill filed on the chancery side of the court of common pleas.

There are several grounds of defense urged by the defendants. Among these, the principal are (1) that this court has not jurisdiction of the case; (2) that the action is barred by the Ohio statutes of limitation; (3) that a court of chancery will not entertain the complainants' claim, by reason of the lapse of time since the occurrence of the transactions involved, and the consequent staleness of their demand. These points, with some others of less significance, have been discussed by the counsel on both sides at great length and with much research. It seems to the court, however, that there is one view of this case, arising under the Ohio statutes, to which I shall presently advert, that is decisive, and which will save the court the labor of considering the other numerous points made. In advance of the consideration of this point, it is proper to say that I have no difficulty on the question of the jurisdiction of this court. The courts of the United States take cognizance of cases to enforce remedies given by a state statute, where the plaintiff who sues is a citizen of another state. This doctrine is conclusively settled by numerous decisions of the supreme court of the United States, and is not open to question. [Clark v. Smith] 13 Pet. [38 U. S.] 195; [McNutt v. Bland] 2 How. [43 U. S.] 9; [Huff v. Hutchinson] 14 How. [55 U. S.] 586; [Fitch v. Creighton] 24 How. [65 U. S.] 159.

I propose now briefly to consider whether the claim asserted in the complainants' bill is barred by any Ohio statute of limitations. The statute in force when the appeal bond was executed in 1839 was passed in 1831, being the act to regulate judgments and executions. 3 Chase, 1715. Section 27 of this act provides: "That in all cases where judgment shall be rendered in the supreme court against the appellant . . . . the successful party shall, before he brings suit on the appeal . . . . bond, issue execution against the principal debtor; and if, by the return upon the execution, it shall appear that the principal debtor has not goods and chattels, lands and tenements sufficient to satisfy the same, the successful party may then commence suit on the appeal . . . bond." Although this provision was repealed by the Code which took effect July 1, 1853, yet being in force when the appeal bond was executed, it is the law of the contract, and applies to all bonds dated before the adoption of the Code. 1 Ohio, 236; 6 Ohio, 536; 7 Ohio, 247; [Bronson v. Kinzie] 1 How. [42 U. S.] 311; [McCracken v. Hayward] 2 How. [43 U. S.] 608; [Gantly v. Ewing] 3 How. [44 U. S.] 707; [Howard v. Bugbee] 24 How. [65 U. S.] 461. The statute just cited makes it a condition precedent to the right to sue the surety in an appeal bond, that it shall appear by the return upon the execution that the principal in the bond had not property sufficient to satisfy the execution. It is obviously a very important question in this case, in reference to the operation of the statute of limitations, when the right of action as against these defendants accrued. They are sued as the widow and heirs of the deceased surety in the appeal bond; and the Ohio statute of 1840, relating to executors and administrators, before cited, limits the right to sue in such a case to one year after the right of action accrued. Now, in behalf of the complainants, it is insisted, first, that no evidence of the insolvency of the principal in the appeal bond, except the return of an execution showing such insolvency, can be considered by the court, as that is the requirement of the statute; and, secondly, that there was no such return to any of the numerous executions issued until the year 1865; and that this suit, having been brought within one year after such return, is not barred by the one year's limitation of the act of 1840 before referred to. On the other hand, the counsel for the defendants strenuously insist that if it reasonably appears as a matter of evidence, by the returns of the executions or otherwise, that between 1840, when the first execution issued, and the year 1865,

when the last execution against the principal was returned, that the principal in the appeal bond was insolvent, and that the complainants failed to bring suit for one year after such insolvency appeared, their right of action against the defendants, as the widow and heirs of the deceased surety, is barred.

There is certainly great force in the reasoning of the defendants' counsel on this point in the mere equitable view of this case. It was obviously the intention of the legislature in limiting the right to sue the widow and heirs to one year after the insolvency of the principal, to enforce promptness on the part of the creditor in the assertion of his rights as against the representatives of a deceased debtor. It was a just and wise policy to protect them from annoyance and litigation after being in peaceable possession of their portion of the estate of the decedent. But if the statute has prescribed the evidence by which alone the insolvency of the principal can be established, and as the condition on which the surety or his representatives shall be liable to suit, such statutory requirement is obligatory on the court. It is undoubtedly true that, looking to the returns of some of the numerous executions and orders of sale issued against the estate of the principal, there is a strong presumption that all his property had been exhausted prior to 1856, and that he was at that date actually insolvent. I can not take time to refer to these various executions and orders of sale—some sixteen in number—and the returns made to them. In March, 1841, the sheriff returned on an execution against the principal, "No goods or chattels found whereon to levy;" but neglected to return that there was no real estate subject to levy. Between that date and the year 1845, numerous other executions issued on which small sums of money were collected, but none of which showed that the principal had any property, real or personal. In 1846, one Boyd filed a creditor's bill against the Sinclairs, making these complainants and other creditors parties. It appears that a decree was entered in the case for the sale of all the property of the Sinclairs; and upon orders of sale issued in the case some real property was found, the last of which was sold in 1855. Now these proceedings certainly establish the fact of the actual insolvency of the Sinclairs, the principals in the appeal bond, in 1855, and ten years prior to the commencement of this suit. But up to that time, the fact of their inability to pay the judgment was not established by the return of an execution showing that fact. The statute referred to requires this in clear terms, and the court can not give it a construction in conflict with this requirement. Indeed, the decisions of the supreme court of Ohio on this statute are decisive of this question. That court has held in several cases that nothing short of the return of an

execution against the principal can be received as evidence of his insolvency, and that such return is necessary as the condition on which alone suit can be brought against the surety. 13 Ohio, 135; 17 Ohio, 244. But it is insisted by the counsel for the defendants that to an execution issued on April 9, 1856, there is an unequivocal return that there was no property, personal or real, of the Sinclairs to be found, and that upon such return a right of action against these defendants accrued. This was nine years prior to the commencement of this suit, and it is claimed that the statute referred to operates as a bar to the action. It appears that on April 28, 1856, the sheriff made the following return upon an execution: "Received this writ April 19, 1856, at 4 o'clock p. m., and on examination I find that the lands within described have all been sold under a proceeding in favor of Robert Boyd, in the court of common pleas, against the defendants and others; and as to the command for further levy, I have made search and can find no property of the defendants, or either of them, in my bailiwick whereon to levy." This return proves clearly the insolvency of the Sinclairs in April, 1856. It is conceded that no other execution issued on the judgment until the year 1865, and after the lapse of about nine years. In that year the judgment was revived, and another execution issued a short time before the commencement of this suit, which was returned, "No property."

The important—and, in one aspect, the controlling—question in this case is, whether the return of the execution of 1856, showing that the Sinclairs then had no property, can be received as evidence of that fact within the requirement of the statute of Ohio. If it can be so viewed, a cause of action accrued to these complainants immediately upon the return of the execution, as against the widow and heirs of the deceased surety in the appeal bond. The statute already referred to provides that the action shall be barred after one year from the return of the execution that the principal has no property. It is admitted in the case that when the execution of 1856 issued, no execution had been issued for five years, and consequently that the judgment was dormant under the statute of Ohio. And the argument of the counsel for the complainants, in avoidance of the one year's limitation, is, that the execution and the return upon it were for all purposes mere nullities, and that consequently no right of action accrued against the widow and heirs of the deceased surety. If this view is sustainable, it follows that the action is not barred by the statute, as this suit was commenced within one year after the return of "No property." to the execution of 1865. But I do not assent to the proposition that the execution and return of 1856 were nullities, in view of the question before the court. An execution upon a dormant judgment and

proceedings under it are undoubtedly voidable, but not absolutely void. They will be set aside on application to the court from which the execution issued; but until that is done they can not be treated as nullities. The complainants in this case—plaintiffs in the judgment—did not choose to consider the judgment as dormant, in the sense that an execution could not issue upon it. It was on their application that the execution issued, and was placed in the hands of the sheriff for service. The sheriff returned in due form, that after search for property on which to levy, none could be found. Now, I understand the law to be well settled, that a sheriff is protected from liability in obeying the command of an execution on a dormant judgment. If property is levied upon and sold, on such an execution, the title of the purchaser will be good, if there is no direct application to the proper court to vacate the proceedings. They are so far in the nature of judicial proceedings, that they can not be collaterally impeached, especially by the person at whose instance they have been commenced. This question was distinctly before the supreme court of New York in the case of Woodcock v. Bennett, 1 Cow. 711. In that case there had been a sale of property on an execution issued upon a dormant judgment. The judge, in his opinion, says: "The validity of the sale turns on the question, whether the execution is to be considered as void or voidable, more than a year and a day having elapsed after judgment and before execution, and there having been no revival by scire facias, I am of opinion that, for this cause, the execution was voidable merely, and that all legal acts done under it, before it was set aside, were valid; and consequently the sale can not be impeached on this ground." The same point had been previously ruled in New York, and seems to be the settled law in that state. 16 Johns. 537; 8 Johns. 361; 3 Caines, 271. And I am not aware that any contrary decision has been made by the courts of Ohio. The cases are numerous in the Reports of the supreme court of the United States, and other courts of the highest authority, that no judicial proceeding can be collaterally impeached. This doctrine is so well known and acquiesced in, that it seems useless to cite the cases in which it has been held. The return of "No property" to the execution of 1856 against the Sinclairs, must be viewed as a compliance with the statute, making it a condition precedent to a suit against the surety in an appeal bond, that there should be such a return. A right of action, therefore, accrued to the complainants in 1856. This suit was not brought until 1865, nine years after the right of action accrued, and is consequently barred by the limitation act referred to.

This conclusion renders it unnecessary to consider the other defenses asserted by the defendants. They set up in their answer,

and it is strenuously urged in argument by the defendants' counsel, that the lapse of time since the origin of the complainants' claim, and the intervening facts connected with it, are a valid defense to a decree in their favor. If the rights of these parties stood alone on that ground of defense, I do not see how it could be sustained within the settled principles of equity jurisprudence. Although there has been a long period intervened between the judgment against the parties to the appeal bond, there is no proof of such negligence by the plaintiffs in the judgment as would invalidate their claim, on the ground of its staleness. Unless the failure of the complainants to sue within a year after their right of action against the surety accrued can be regarded as negligence, they seemed to have pursued their claim with great pertinacity and a good degree of diligence. Yet there are certainly some equitable views of this case that might properly induce a chancellor to withhold a decree for these complainants, unless demanded by the clearest and most stringent principles of law. I do not propose to consider minutely the facts leading to the conclusion, that a decree against these defendants would operate with great hardship on them. In a mere equitable aspect of the case, there are some facts which, though not a defense to the action, are significant and not wholly unworthy of notice. The suit is against the representatives of a deceased surety in an appeal bond executed more than twenty-five years before the bringing of this suit. The estate of the deceased surety was finally settled by his administratrix in 1846, and she was discharged from her trust, without any presentation of the claim of the complainants against the estate. Indeed, it is in evidence that in 1845, one of the complainants assured Mrs. Alexander, the administratrix, that she should not be troubled with any claim against her husband's estate on account of his suretyship in the appeal bond. Upon the final settlement of James Alexander's estate, some land, not exceeding $2,000 in value, was apportioned to the widow and some six or seven children, together with a trifling sum as the proceeds of the personal property. And from 1846 to 1865, they have been in the quiet enjoyment of their scanty inheritance. Another fact is, that nearly the whole of the $4,000, now claimed of these defendants, is for interest which has accumulated during the long period in which these transactions have been in progress. The judgment rendered against the Sinclairs, in 1839, on the appeal bond was between $2,500 and $2,600; and it appears that the sums paid upon the judgment and collected on execution and orders of sale, from time to time, amounted to $2,310, leaving less than $300 of the principal of the judgment yet due. In view of these facts, it is not perceived that upon abstract questions of equity, these complainants ought, at this late day, to insist

upon a decree, which shall strip the widow and heirs, who are defendants in this case, of the pittance received as their inheritance, and of which they have been in the undisturbed enjoyment for more than twenty-five years. Upon the whole, the bill must be dismissed at the costs of the complainants.