ARMSTRONG AND AL. v. KENT.

1. If a devise is to E. R. and her heirs forever, and if she die without heirs and intestate, then to C. and M. This devise over is not after an indefinite failure of issue, and is not on that account void.

2. This devise over in case E. R. dies *intestate*, implies and confers a power of *disposition* by will, which is inconsistent with the executory devise; an executory devise is good only where the taker of the first fee has no power to defeat the devise over.

3. Where real estate is devised in fee, or personal estate bequeathed absolutely, with a limitation over which would be otherwise good by way of executory devise; if the will expressly or by implication confers the power of disposition by will, or otherwise, this defeats the limitation over. And this is the same, whether the power be to dispose by will or by deed.

This was a case sent from the Court of Chancery to this court for their opinion on a question of law, arising in a cause therein pending, between Charles M. Armstrong, William D. Salter and wife, and George T. Elliott, complainants, and Andrew C. Armstrong, William Kent, James G. Nutman, John Kean, Hamilton Fish and wife, and Christine Kean, defendants. The question arose upon the bill of the complainants, and the answer of the defendant, W. Kent, the other defendants not making any answer or defence. The Chancellor sent to the Supreme Court for their certificate thereon the following statement of facts and questions:

Margaret Armstrong, the wife of Col. William Armstrong, resided in Elizabethtown, in the County of Essex, and State of New Jersey, and had four children, Margaret, the wife of Wm. D. Salter, Charles M. Armstrong, Eliza Rosetta Armstrong, and Edward Armstrong. The said Margaret Armstrong was possessed of a sole and separate property, free from the control of her husband, William Armstrong, which consisted of a certain house, garden, and appurtenances, situated at Elizabethtown, which was held by Peter Kean, in trust for her and her heirs, and a large amount of personal property. That the said Margaret Armstrong, being so entitled to real and personal estate, and having lawful authority for that purpose, executed her last will and testament on the 16th day of September, 1827,

in due form of law to pass real estate: That on the 25th day of September, 1827, the said Margaret Armstrong died, leaving her said husband William Armstrong, and her four children surviving her, without having revoked the said will. The following are the parts of the said will material to the present question:

First, my will is, that my just debts and funeral expenses shall be duly paid by my executor and executrix hereinafter named. Item: I give and bequeath all my plate to be equally divided among my four children, Edward Armstrong, Charles M. Armstrong, Margaret Salter, the wife of William Salter, (of the American Navy,) and Eliza Rosetta Armstrong, share and share alike. Item: I give and bequeath the house and lot which I purchased from Andrew Woodruff, and which was conveyed by said Woodruff to Peter Kean in trust for me and my heirs, to my beloved husband, William Armstrong, for and during the full end and term of his natural life, to be used and occupied by him as a residence, together with the use of all the household furniture, (plate excepted,) now therein contained: but if my said husband should marry, remove to foreign parts, or elect to break up house-keeping, then my will is that the above devised to him shall become null and void, and that the said house and lot, together with all and singular, the household furniture therein, shall become the absolute property of my beloved daughter, Eliza Rosetta Armstrong, to be taken and held by her under the like restrictions, limitations and conditions, as the property hereinafter bequeathed to her. Item: I give and bequeath all the rest and residue of my estate in the States of New York and New Jersey, or wherever else situated, whether real, personal or mixed, (together with the reversion and remainder of the house and lot, together with my household furniture, heretofore bequeathed to my husband, William Armstrong, during his natural life, or so long as he shall remain unmarried, and elect to occupy the same as a residence,) to my beloved daughter, Eliza Rosetta Armstrong, to be by her possessed and enjoyed and occupied, to her and her heirs forever, (provided, nevertheless, that she shall, and do, out of the rents, issues and profits of the said estate, provide a decent and com-

fortable maintenance for my faithful and affectionate domestic, Catharine Small, whose long and affectionate services merit and receive my warmest gratitude.) But if my said daughter Eliza Rosetta should die *without heirs and intestate,* then my will is that all the *estate* above devised to her, shall vest in my son Charles M. Armstrong, and my daughter Margaret Salter, and their heirs, to be divided between them share and share alike. Lastly, I do hereby nominate and appoint my son Edward Armstrong, and my daughter Eliza Rosetta Armstrong, executor and executrix of this my last will and testament."

That on the 8th of April, 1828, Eliza Rosetta Armstrong proved the will, and took upon herself the administration of the estate. She took into her possession all the personal estate, except what was given to her father, William Armstrong, and after the payment of the debts and legacies, received the surplus into her hands. William Armstrong occupied the house and lot at Elizabethtown, mentioned in the will, as also the personal estate bequeathed to him till the time of his death, and Eliza Rosetta lived with her father till the time of his death. Eliza Rosetta on or about the first of April, 1830, sold the house and lot at Elizabethtown to A. Thompson, for $2,500, under the impression that she had the right, as alleged in the bill, and in good faith, as is alleged by her. trustee, the defendant, W. Kent, in his answer. This house and lot were afterwards conveyed by auditors in attachment, to Edward Armstrong, under an attachment against Thompson; and Edward Armstrong conveyed the same property to James G. Nutman. Eliza Rosetta Armstrong, after the death of her father, sold the household furniture, and re-invested the proceeds. On the 5th of November, 1838, Eliza Rosetta Armstrong made and entered into an agreement or marriage settlement, between herself as party of the first part, Andrew C. Armstrong, as party of the second part, and William Kent, party of the third part, and shortly afterwards married the said Andrew C. Armstrong, a gentleman of New Orleans.

That settlement conveyed all her estate to W. Kent, in trust for her separate use during coverture, and if she survived, to her use absolutely, and if she died before her intended husband,

Armstrong and al. v. Kent.

then to the uses that she might by testamentary writing appoint, and in default of such appointment, to the use of her husband during his life, and at his death to the use of such persons as at her death might be her next of kin by the law of N. York.

After the marriage, Kent took possession of Eliza Rosetta's property, and paid the income of the same to her during her life. Eliza Armstrong died at New Orleans, 29th November, 1839, without heirs of her body, and intestate, and without having made any other disposition of the property in said marriage settlement mentioned, and Andrew C. Armstrong, her husband, survived her. The complainants, by their bill insist, that upon the death of Eliza Rosetta, by a true construction of the will, Charles M. Armstrong and Margaret Salter became entitled to all the estate, real and personal, so given and devised to her in and by her said mother's will; and the defendant, Kent, in his answer, submits that question to the consideration of the court.

Peter Kean, the trustee of Margaret Armstrong, died in 1828, leaving him surviving John Kean, Julia Kean, now wife of Hamilton Fish, and Christine Keane, his children and heirs at law, upon whom, by operation of law, that trust was cast. (a) Upon the marriage of Margaret Armstrong with William D. Salter, a marriage settlement was made and entered into, and Peter Kean became the trustee under that marriage settlement, and upon the death of Peter Kean, George T. Elliott was appointed trustee in his stead. Such appointment took place 29th November, 1830.

Andrew C. Armstrong claims to be entitled to this property during his lifetime. After the decease of Margaret Armstrong, and in the month of August, 1828, Margaret Salter, Charles M. Armstrong, and Edward Armstrong, executed under their hands and seals, and delivered to Eliza R. Armstrong a deed poll, which was prepared and designed to be executed also by the said William Armstrong, Sarah, the wife of the said Edward Armstrong, and William D. Salter, but neither ever signed the same.

---

(a) *Quere?* per CARPENTER, J. If trust did not descend to eldest son of Peter Kean alone? Is trust estate within our statute of descents.

The following is a copy of the said deed :

" Whereas, some time previous to the marriage between William Armstrong, now of the town of Elizabeth, County of Essex, and State of New Jersey, and Margaret Armstrong, whose name previous to said marriage was Margaret Marshall, a certain bond was executed by said William Armstrong, to ———— Ramsay, of the city of New York, merchants : the condition of which bond was, that the said William Armstrong shall allow the said Margaret Armstrong, then Margaret Marshall, to manage and possess her estate as if she were a *femme sole,* and to dispose of the same by will or otherwise, as on reference to said bond now in the possession of Eliza R. Armstrong, who is hereinafter particularly named, will more fully and at large appear ; and whereas a marriage, as contemplated in said bond, did take place between said William Armstrong and said Margaret Marshall. And whereas, the said Margaret Armstrong after said marriage, and while she was the wife of said William Armstrong, that is to say on the 16th day of September, one thousand eight hundred and twenty-seven, made and executed a last will and testament, by which after certain legacies and bequests to certain persons therein named, and a devise to William Armstrong, aforesaid, during his natural life, of a certain house and lot therein. named, on certain conditions, the rest and residue of said estate is given, bequeathed, and devised to the said Eliza R. Armstrong, therein described as Eliza Rosetta Armstrong, absolutely, and to her heirs forever, as on reference to said will on file in the office of the Surrogate of said county of Essex, will more fully appear. And whereas, the said Margaret Armstrong has recently died, leaving her surviving the said William Armstrong, her said husband, and Edward Armstrong, of ————, in the county of Orange, and State of New York, who is intermarried with Sarah Armstrong, Margaret Salter, the wife of William D. Salter, of the United States Navy, and Charles M. Armstrong, also of said navy, and the said Eliza R. Armstrong, her only children and issue, and her sole heirs at law and next of kin her surviving. And whereas, doubts have arisen respecting the validity of said will, and the parties

to these presents are desirous of rendering the said will (if the same be in any way void or defective,) valid in the law, and good to all intents and purposes. Now, therefore, these presents witness, that we the said Edward Armstrong, and Sarah Armstrong, his wife, William D. Salter, and Margaret Salter, Charles M. Armstrong and William Armstrong, jointly, and each of us individually and severally, according to the rights, interests, titles and claims, in us jointly or severally vested, do, and each of us doth, by these presents, confirm, establish, ratify and make good the said will, and all the provisions thereof, and do, and each of us doth declare said will and its provisions to be valid, and good in the law ; and these presents further witness, that we the said Edward Armstrong, and Sarah Armstrong, William D. Salter, and Margaret Salter, Charles M. Armstrong, and William Armstrong, in consideration of the premises, and of the sum of one dollar to us and each of us in hand paid, by the said Eliza R. Armstrong, the receipt whereof is hereby acknowledged, have assigned, transferred, quit claimed and set over, and by these presents do assign, transfer, quit claim and set over unto the said Eliza R. Armstrong, and her heirs, executors, administrators, and assigns, absolutely and forever, all our right, title, interest, property, estate, claim and demand, of all and every kind whatsoever, of, in or to, or concerning the estate, both real and personal, in possession or reversion, or remainder, or in expectation, of every kind and description, of which the said Margaret Armstrong, during her life, and at any time thereof, either before or after her said marriage, was possessed or seised, or in any way interested in or entitled unto, (excepting, always, such property as in and by the said will of the said Margaret Armstrong, we or either of us by any legacy or devise, are entitled to ;) to have and to hold the same, unto her the said Eliza R. Armstrong, her heirs, executors, administrators and assigns, absolutely and forever. In witness whereof, we have hereunto set our hands and seals, this —— day of August, one thousand eight hundred and twenty-eight. It is however, understood, that nothing in these presents contained, shall injure or any wise affect the right or inte-

rest of the said Edward Armstrong, as a creditor of the said estate, or mortgages of any property, which belongs or belonged to said estate."

Assuming that the bonds and mortgages, stocks and personal property, conveyed by the said marriage settlement to W. Kent in trust, as therein stated, are the proceeds of the property de-vised and bequeathed by the will of Margaret Armstrong, to Eliza R. Armstrong, in the manner in the said will provided, with the limitation over as also therein provided; the questions presented for consideration are the same as would be presented to a court of law, under a will made by one having the legal es-tate in the real and personal property devised and bequeathed to Eliza R. Armstrong, in the manner provided by this will, with the limitation over therein provided. It is a devise of all the rest and residue of the estate, real, personal or mixed, to Eliza R. Armstrong, to be by her possessed, enjoyed and occu-pied, to her and her heirs forever; but if she should die without heirs and intestate, then that all the estate above devised to her shall vest in her brother, Charles M. Armstrong, and sister, Margaret Salter, and their heirs, to be divided between them share and share alike.

The questions presented to the Supreme Court for their opin-ion, are 1st, Whether these clauses taken together and by force of the words "and intestate," do or do not give to Eliza a fee simple in the lands, and an absolute property in the personal estate, and if not a fee simple in the lands, an absolute property in the personal estate.

2d. If by force of the words "and intestate," neither a fee simple in the lands nor an absolute property in the personal estate is given, what estate is given to Eliza in the lands? Is it a fee tail in Eliza, with a contingent remainder over to Charles and Margaret? or is the limitation over to Charles and Margaret an executory devise? In other words, are the words "without heirs," or the words "without heirs and intestate," to be construed to mean an indefinite failure of issue, or only a failure of issue at the time of Eliza's death?

3d. If it be construed to give Eliza an estate tail in the land, what estate or interest has she in the personal property?

4th. If the limitation over be construed to be an executory devise, is (such) a limitation over of personal property on one's dying without heirs and intestate, within the rules of law?

5th. " What was the effect in law, of the deed from Margaret Salter, Charles M. Armstrong, and Edward Armstrong, to Eliza R. Armstrong, as hereinbefore stated, and how does it affect the trust to William Kent?"

The foregoing state of the case having been agreed upon by the counsel for the respective parties, the same is certified accordingly.

O. S. HALSTED, C.

Argued before the CHIEF JUSTICE, and NEVIUS and CARPENTER, JJ.

*I. W. Scudder* and *Vroom*, for plaintiffs.

The first clause alone would give a fee to Eliza, but by the effect of the subsequent words, she takes either a fee contingent or an estate tail. But for the words " *and intestate*," perhaps she would take an estate tail. These words shew that a definite failure of issue was contemplated, and the limitation over is therefore by way of executory devise. Such limitation over will apply to both real and personal estate. 2 *B. C.* 172, 173; *Pells* v. *Brown, Cro. Jac.* 590; *Fosdick* v. *Cornell*, 1 *John.* 440; 2 *Fearne* 18; *Jackson* v. *Staats*, 11 *John.* 337; *Doe* v. *Stopford*, 5 *East.* 501; *Executors of Moffatt* v. *Strong*, 10 *John.* 12; *Barnitz's Lessee* v. *Casey*, 7 *Cranch*, 456; *Den* v. *Schenck*, 3 *Halst.* 29; *Welts* v. *Ritter*, 3 *Whart.* 208; *Right d. Day* v. *Day*, 16 *East.* 67; 2 *Ashmead*, 12; *Leddel* v. *Wills, Spenc.* 223; *Den* v. *Allaire, Ib.* 6.

It will be contended that the implied power of disposition by the words " *and intestate*," will make the limitation over void, considered as an executory devise. But a power of disposition by will, will not give a fee. To have this effect, and to make the limitation over void, the control must be absolute. Here, at any rate, it is but limited; a mere power to devise, and not an absolute power of alienation. *Doe* v. *Howland*, 8 *Cow.* 277,

284 ; *Bradly* v. *Westcott*, 13 *Ves.* 445 ; *Daniel* v. *Ubley*, 1 *Jones* 137, cited, 1 *Sudg. Powers*, 121, (*Law Lib.*) The incompatibility must be entire, and in all the cases on the other side there was a power of alienation.

The deed does not seem to have any bearing on the question in controversy. All the rights by the will are expressly reserved. The object of the deed was to confirm the will, and it excepts from its operation whatever the grantors were entitled to take under the deed.

*W. Pennington*, contra.

The legal question to be here settled, is simply what estate did Eliza take under the will of her mother ? The bill is filed by Charles and Margaret, claiming under this will.

There is an absolute estate, not a life estate, given to Eliza, by the first clause. It is to her " to be by her possessed, enjoyed, and occupied, to her and her heirs forever." Then comes qualifying words which, if they refer to an indefinite failure of issue, would reduce it to an estate tail, and under our statute, an estate for life in the daughter.

But suppose the clause " should die without heirs and *intestate*," to refer to a definite failure of issue ; then they shew such a power of disposition, that the limitation over is void, and the devisee takes a fee. Such is the case in regard to the real estate ; if so as to real estate, the personal estate is carried of course. The power to dispose by devise, here clearly implied, is just as effectual as to dispose by conveyance. There is no authority for the distinction made by SAVAGE, C. J., (8 *Cow.* 284.) In none of the cases is this distinction recognized, and it is essential to the validity of an executory devise, that it cannot be defeated by the first taker. 4 *Kent*, 270, (4*th Ed.*) ; *Attorney Gen.* v. *Hall, Fitzgibbon*, 314 ; *Ide* v. *Ide*, 5 *Mass.* 500 ; *Jackson d. Brewster* v. *Bull*, 10 *John.* 19 ; *Jackson* v. *De Lancey*, 13 *Ib.* 537 ; *Jackson* v. *Robins*, 15 *Ib.* 169 ; *S. C. on Error*, 16 *Ib.* 537, 584 ; *The Dutch Church* v. *Smock, Saxton*, 148. If absolute as to real property, so also in regard to personal.

But suppose the limitation over to be good, then it is an estate tail, and the first taker took an absolute interest in the personal property. Personal property may be limited over by way of executory devise, but the same words which would create an estate tail as to real estate, will give the absolute interest as to chattels. 2 *Kent* 353 & *cases ; 4 Ib.* 281, 536 & *note (5th Ed.) ;* 2 *B. C.* 398 ; *Ward on Legacies* 236 (*Law Lib.*) ; *Hall* v. *Eddy* 2 *Green* 174 ; *Kay* v. *Ex'rs of Kay,* 3 *Gr. Ch. R.* 495 ; *West-cott* v. *Cady,* 5 *John. Ch. R.* 346.

The construction is, that the limitation over, if valid, is to Mrs. Salter and Charles ; now they have conveyed to Eliza in her lifetime. If not valid as regards Mrs. Salter, it is a valid conveyance on the part of Charles, and is a release of all his interest in this estate. There are items in the will, plate, &c. for instance, to which the exception in the deed may apply.

NEVIUS, J. The questions submitted for the consideration of this court, on the foregoing case sent here, are—

1st, Whether the devise to Eliza, by force of the words " and *intestate,*" do or do not give to her a fee simple estate in the lands, and an absolute property in the personal estate, or if not a fee simple in the lands, an absolute property in the personal estate.

2d. If by force of the words " *and intestate,*" neither a fee simple in the lands, nor an absolute property in the personal estate is given, what estate is given to Eliza in the lands ? Is it a fee tail in Eliza with a contingent remainder over to Charles and Margaret as an executory devise ? In other words, are the words " without heirs," or " without heirs and intestate," to be construed to mean an indefinite failure of issue, or only a failure of issue at the time of Eliza's death ?

3. If it be construed to give Eliza an estate tail in the lands, what estate or interest had she in the personal property ?

4. If the limitation over be construed to be an executory devise, is such limitation over of personal property on one's dying without heirs and intestate, within the rules of law ?

If the first question submitted by the Chancellor can be answered in the affirmative, it will not be necessary to express

any opinion upon the other questions. The testatrix by her will gave to her daughter Eliza R. Armstrong her real property absolutely, after the determination of a life estate previously devised to her husband William Armstrong, and then gave her all the residue of her estate, being personal property, to her and her heirs forever. So far the devise is of a fee simple estate in the lands, and an absolute property in the personal estate. But this devise is followed by a proviso, if she should die " without heirs and intestate," then that the same should vest in Charles and Margaret and their heirs. If the words " and intestate " had been omitted in the proviso, the estate devised to Eliza in the lands would have been a fee tail, with an executory devise over, to take effect on the contingency of Eliza's death without issue, for the word heirs in this connection cannot be construed *heirs general,* because the devise over, is to two of her heirs general, but must be construed to mean heirs of her body, or issue. And it is equally plain that the testatrix did not mean that the estate should vest in Charles and Margaret, on an indefinite failure of issue of Eliza, but on failure of issue at the time of her death. I need cite no other authorities for this construction, than *Den* v. *Allaire, Spencer* 6 ; *Seddal & ux.* v. *Wills ; do.* 223, and 5 *Mass.* 500, *Ide* v. *Ide et al.*

But the serious and only question involved in the case is as to the effect of the words " and intestate," upon the estate devised. The rule seems well settled, that where there is an absolute power of disposition given by the will to the first taker, the limitation over upon his dying without heirs, is void, as being inconsistent with the absolute estate, or power of disposition expressly given or necessarily implied. 4 *Kent. Com.* 264 § 1, and cases there cited. The words " and intestate," clearly imply a power in Eliza to devise, and bequeath the estate given to *her* by the will ; but it is contended by the complainants, that this is not an *absolute* power of disposition over the estate devised, and that therefore the limitation over is not void ; and we are referred to the opinion of Ch. J. Savage, in *Doe* v. *Howland,* 8 *Cow. R.* 284, where he remarks, " It is undoubtedly true that a devise, with power to convey in fee, carries a fee,

though a devise with power to devise in fee, carries but a life estate," I confess I am unable to see the force of the distinction laid down so emphatically by the learned judge in the case just cited, nor have I been able to find such distinction laid down elsewhere. A power to devise by will, is as absolute a power as a power to convey, where conveyance means by deed of bargain and sale. But it must be borne in mind, that in the case of *Doe* v. *Howland,* the devise was an estate for life only, in the first taker, with power to sell part, and with power to devise the whole. Neither power, therefore, increased the *quantum of estate* in the first devisee. The case before us differs in this respect, for here is an absolute estate given in the first instance, attempted to be restrained or limited by a subsequent clause. But if the distinction taken in the case of *Howland* is sound, yet I apprehend there is a reason for not applying it in this case. Here the limitation over is of all the property *personal,* as well as real, and in the same clause, and the contingency upon which the devise over is to take effect, applies as well to the personal, as to the real estate. The personal estate is bequeathed absolutely to Eliza. Did the testatrix mean to limit or restrain the dominion and control of Eliza over this personal estate? Did she mean that her daughter should have only the use or income of such estate, and not the absolute disposition of it? If such had been her intention, it would have been so expressed. From the nature of this property, the character of the bequest, an absolute power of disposition over the personal estate passed to Eliza by will, she could use and consume, transfer or destroy it if she pleased, without accountability to any one, and I think without the power of restraint by any one. If this be so, the limitation over is inconsistent with the devise of this property, as no part of it might have been left at Eliza's death. As this limitation over makes no distinction between real and personal estate, we may consider both subject to an absolute power of disposition in the first devisee, and the limitation over therefore void.

As this view of the case disposes of the main question submitted to us, it becomes unnecessary to advert to the other questions involved in the case.

CARPENTER, J. The language we are called upon to construe, so far as it is material to recite it, is as follows :

" Item : I give and bequeath all the rest and residue of my estate, &c. wherever situated, whether real, personal, or mixed, &c. to my beloved daughter Eliza Rosetta Armstrong, to be by her possessed, enjoyed, and occupied, to her and her heirs forever (provided, nevertheless, that she shall, and do, out of the rents, issues and profits of the said estate provide a decent and comfortable maintenance for my faithful domestic, C. S., &c.) But if my said daughter Eliza Rosetta should die without heirs and intestate, then my will is that all the estate above devised to her shall vest in my son Charles M. Armstrong, and my daughter Margaret Salter and their heirs, to be divided between them share and share alike."

It was not disputed on the argument, but that were the word *intestate* omitted, this devise would be an estate tail to the daughter, with a limitation over on failure of issue, by way of contingent remainder : the words " dying without heirs," when uncontrolled by other expressions, by all the cases, importing an indefinite failure of issue. The fee in such case would be cut down to a fee tail, as an executory devise to take effect on a general failure of issue, would be void for remoteness. But the word *intestate* refers to a contingency which must necessarily occur, if at all, at the very instant of the death of the daughter. The conclusion therefore cannot be resisted, that the failure of issue here meant was that of a definite failure at the time of her death. Thus in *Ide* v. *Ide*, 5 *Mass.* 500, after a devise to P. his heirs and assigns forever, there was this clause : " and further, if my son P. shall die and leave no lawful heirs, what estate *he shall leave*," &c. then over : it was held as very clear, that the contingency on which the devisees over were to take, must happen, if at all, on the death of the first taker. So again in *Doe d. King* v. *Frost*, 3 *B. & Ald.* 546, where the devise over was subject to such legacies as the first taker might leave to the younger branches of the family, it was held that a definite failure of issue on the death of the first taker, was in the contemplation of the testator.

But supposing this construction to be adopted, it is urged that

the word *intestate* implies a power of disposition by the daughter inconsistent with, and which avoids the limitation over. No precise form of words is necessary for the creation of a power which may be implied from any words which clearly indicate an intention on the part of the testator. In a case cited, *Ide* v. *Ide,* the limitation over was of such estate as the first taker should *leave.* It was held to imply that he might dispose at his pleasure of the estate given, both real and personal, which was inconsistent with the limitation over, and therefore void. So in *Attorney General* v. *Hall, Fitzg.* 314 (cited in *Ide* v. *Ide,*) and in *Jackson* v. *Bull,* 10 *John.* 19, the limitation over was of such property as the first taker *should die possessed of,* and these words were held to imply an absolute power of alienation, and consequently an absolute ownership, repugnant to the limitation and destructive of it. These cases are reviewed, and this doctrine reiterated and sustained by Chancellor *Kent,* in the opinion delivered by him in the Court of Errors of New York, in the case of *Jackson* v. *Robins,* 16 *John.* 537, 584. He there laid it down as an incontrovertible rule, that where an estate is given to a person generally or indefinitely with a power of disposition that it carries a fee ; and that the only exception to the rule is, where the testator gives to the first taker an estate for life *only,* by certain and express words, and annexes to it a power of disposal. In that special case the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion.

But again, on the other hand, it is said, that admitting the implied power in the daughter to dispose by will, it is not such an absolute power of disposition as will give an estate in fee simple to the daughter and defeat a limitation over. A distinction made in *Doe* v. *Howland,* 8 *Cow.* 284, is relied on : that a devise with power to devise a fee carries but a life estate. No authorities are cited by the learned judge who made the distinction, and it was not necessary for the decision of the case, the intention not being left to construction, but an estate for life and no greater, being there expressly given. The remark was therefore merely *obiter,* and must stand upon its intrinsic merit.

But I think it will be found to have been otherwise settled,

and that the distinction thus made cannot be supported. In a case decided by Sir Thomas Plumer, M. R., in 1822, this very point was presented for consideration. It was held that a bequest to be paid to A. at twenty-one, and then over in the event of his dying under that age, or afterwards without heirs and *intestate*, was an absolute interest in A. on his attaining twenty-one. It was held that the limitation over was not good : that the testator could not give property and separate from it the *jus disponendi* ; and the case was distinguished from those where there is an express estate for life only, with a power afterwards expressly given as a power. *Cuthbert* v. *Purrier*, 1 *Jac.* 415 ; (4 *Eng. Ch. Reports*). This case has been since followed and approved in the English Courts by a very eminent judge as late as 1842. In the case now referred to, which was in regard to leasehold property, the testator bequeathed the house and premises, with the furniture and plate to his son (Richard) and added : "should he die without heir or *will*, the profits of the said house to be equally divided between all my grandchildren by the consent of his mother." It was held that the son took an absolute interest in the house. The Vice Chancellor (Sir J. Wigram) said : "The question then is, whether there is any difference between a gift over in the event of the legatee not disposing of the legacy, and a gift over in the event of his not disposing of it by will. I think no such distinction can be maintained. The will of Richard is not to be the exercise of a power, but an incident to property which is sufficient to place the whole at the absolute disposal of the legatee. The cases cited in behalf of the personal representatives of Richard show that when such absolute power is given, the property is absolute. I read this part of the will therefore as if it had stood—'If he shall have no heir, and shall not have disposed of the property.'" *Green* v. *Harvey*, 1 *Hare* 428.

Inviolability seems to be a primary characteristic of an executory devise: that it cannot be affected by the will of the first taker. *Beachcroft* v. *Broome*, 4 *T. R.* 441, has been frequently cited as an opposing authority. The case itself was simply this : A testator having devised to A. and his heirs, but if he died *without settling or disposing of the property*, or without

issue, then over, the title of a purchaser under the first taker was held good. Lord *Kenyon* seemed to think the executory devise over was good, but the case did not call for a decision on this point, and the remark was a mere *dictum,* which has not been sustained. See remarks of Chancellor *Kent* 16 *John.* 586 ; *Lewis on Perpetuities* 230 (*Law Lib.* 1846).

That some of the cases cited were upon bequests of personalty, is immaterial in regard to this species of disposition, for the authorities show that there is no difference as respects an executory devise of real or personal property. The same rules apply to either case, and whether the devise be of land or of chattels, the power of disposal equally destroys the executory limitation.

The case before us is not one where it is left to construction, whether a general or indefinite devise shall be construed an estate for life only, or enlarged to a fee by implication. It is the case of a fee first given by express words, with a power of disposition by will. This power is one inconsistent with and destructive of, the limitation over, and there remains therefore nothing to abridge the power of disposition during life, which is an incident to property. Upon the authorities cited, and more particularly the cases of *Cuthbert* v. *Purrier,* and *Green* v. *Harvey,* I am of opinion that the daughter Eliza Rosetta, took an absolute interest in the property devised and bequeathed, both real and personal, and that the limitation over was void.

This view seems to render any opinion unnecessary as to the construction of the deed, though it is not seen that, under any circumstances, it could have any effect upon the matter in controversy. Its intent, and therefore its only effect, would seem to have been to confirm the will of Margaret Armstrong.

GREEN, C. J. concurred.

Thereupon the following certificate was given :

" I, HENRY W. GREEN, Chief Justice of the Supreme Court, do certify and report to His Honor the Chancellor of New Jersey, as the unanimous opinion of said court upon the questions

submitted in the above cause. That Margaret Armstrong, by the will in the said case mentioned in the residuary clause thereof, devised to her daughter Eliza Rosetta Armstrong, an estate in fee simple in the lands, and bequeathed to her an absolute property in the personal estate therein devised and bequeathed to her. That the words "without heir and intestate" in that clause, imply a power of disposition, and are inconsistent with, and avoid, the limitation over; that so far as the said lands and personal estate were embraced in the property conveyed to William Kent, the same passed under the trusts expressed in the marriage article referred to in the said case. And I further report, as the *opinion of the said Court, that the deed referred to did not, in the view taken of the case by the court, affect the trust in William Kent.

HENRY W. GREEN.

Dated October Term, 1849.

CITED *in Den* v. *Gibbons,* 2 *Zab.* 154; *Downey* v. *Borden,* 7 *Vr.* 467; *Annin's Ex.* v. *Vandoren's Ad.,* 1 *McChr.* 143; *Jones' Ex.* v. *Stites,* 4 *C. E. Gr.* 327. SEE *Armstrong* v. *Kent,* 2 *Hal. Ch.* 573; *Kent* v. *Armstrong, 1d.* 637.