DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1872.

---

HENRY DOWNEY, PLAINTIFF IN ERROR, v. JOSEPH BOR-
DEN, DEFENDANT.

1. Where lands are devised in the first instance in language indetermi-
nate as to the quantity of the estate from which an estate for life would
result by implication, and words adapted to the creation of a power
of disposal without restriction as to the mode of execution are
added,. the construction will be that an estate in fee is given; but
where the quantity of the estate is expressly defined to be for life, the
superadded words will be construed to be a mere power. The dis-
tinction is between a devise expressly for life, with a power of disposi-
tion annexed, and a devise in general terms with such a power
annexed; in the former case an estate for life only passes, in the latter
a fee.

2. The testator, by his will, gave his real and personal estate to his
widow in general terms, and by a subsequent clause he gave and be-
queathed to her one-third of all his estate, "that may remain at the
time of her death for to dispose of as she may see proper." The
remaining two-thirds, after certain specific bequests, he directed to be
divided in equal shares among his sisters and the heirs of a deceased
brother. *Held*, that the widow took an estate in fee simple in the one-
third of the lands.

460

On writ of error to the Supreme Court.

The above stated cause coming on to be tried in the Ocean County Circuit Court, before His Honor Edward W. Scudder, Judge, the respective parties agreed that the same should be tried by the court. The plaintiffs offered in evidence a certified copy of a deed from John Borden to William Akins, dated March 2d, 1831, for the lands in question in this suit.

Plaintiffs also proved that William Akins went into possession of the land in controversy about the date of said deed, and continued in the possession till his death; that he died in 1850, leaving Lucy Akins, his widow, in possession of the same, and that she continued to occupy it till her death; she died in February, 1870, and that William Akins died without issue, leaving two sisters and children of two deceased sisters and a brother, and that the plaintiffs in this suit were first cousins of Lucy Akins, and her nearest of kin.

Plaintiffs offered a certified copy of the will of William Akins, with the probate and proofs of the same, dated September 5th, 1850, and admitted to probate by the surrogate of the county of Ocean, on the 19th day of May, A. D. 1851, as follows, to wit:

I, William Akins, of the township of Brick, in the county of Ocean, late the township of Howell, county of Monmouth, and State of New Jersey, being of sound mind and memory, blessed be God for it, I do make and publish this my last will and testament.

*First.* I recommend my soul to God that gave it, and my body to the grave.

*Second.* I order and direct my executrix and my executor hereinafter named, to pay out of my movable estate all my funeral expenses and just debts, as speedily as possible.

*Third.* I give and bequeath to my beloved wife, Lucy Akins, all my farm and plantation whereon I now dwell, and all my meadows and beaches, and all my woodlands, and all my rights in lands that I now or can own, or come to my

estate after my death, either by will or deed, in any lawful manner, for the benefit of my estate, excepting a lot of meadow, &c., which I order and direct my executrix and my executor, hereinafter named, to sell at public auction to the highest bidder, for the benefit of my estate; also, all my notes of hand, bonds, mortgages, and book accounts; and also so much of my household and kitchen furniture as she may think she stands in need of for her use. I also order and direct my executrix and my executor to sell at public auction all my horses, cattle, hogs, and all kinds of stock belonging to my estate—my carriage, wagons, plows, harrows, and every kind of implement that is attached to my farm for the use of farming said farm, and all the hay, straw, and grain of every kind that may be on said farm at the time of my decease; and also my share or part of the schooner Samuel F. Allen, and my share of a scow that I own in partnership with Colonel James Osborn; also, I order and direct positive, that after the first sale of the hay and straw, that no hay, straw, or manure of any kind shall not be sold from off said farm, but to be used for the benefit. It is my wish that the timber that is growing on the different lots of woodland that belongs to my estate should be carefully preserved for the benefit of my estate, to be and remain as is herein directed, so long as she remains my widow.

*Fourth.* If my wife, Lucy Akins, should marry, I order and direct that she is not to have, after her marriage, no moneys belonging to my estate at that time, but is still to have all my lands and meadows as is directed in the first bequest to her in my will.

*Fifth.* I also give and bequeath to my beloved wife, Lucy Akins, one-third of all my estate that may remain at the time of her death, for to dispose of as she may see proper; and the other two-thirds to be divided as I hereinafter order and direct.

*Sixth.* I give and bequeath to my nephew, Benjamin Lemming, my sister Rebecca's son, the same amount of moneys that may come to any one of the heirs of my brother, Ben-

jamin Akins, deceased; and I give to my sister, Mary Jefferry, five dollars; to my nephew, William Parker, five dollars; to my nephew, John Parker, five dollars; and the balance of the two-thirds of my estate to be divided in four equal parts or shares, that is to say: the heirs of my brother, Benjamin Akins, deceased, one-fourth part; my sister, Hannah Shatelear, one-fourth part; my sister, Lydia Ellen, one-fourth part; my sister, Sarah Badby, one-fourth part.

Plaintiffs also proved that the defendant, Henry Downey, was in possession of the premises in question, the same having been rented to him by the agent of the heirs of William Akins, deceased.

The defendant proved that William Akins died leaving sisters and children of a deceased brother and sisters, named and referred to in his said will, as his heirs. The court gave judgment that the plaintiffs were jointly entitled to the one undivided third part of the premises in question.

The opinion of the Supreme Court is reported in 6 *Vroom* 74.

For the plaintiff in error, *W. H. Vredenburgh* and *C. Parker*.

1. The question as to every will is, what was the intention of the testator, as derived from his language and the circumstances surrounding him? And the stringency of interpretation differs with the inexpertness of testators and draughtsmen. 2 *Redf. on Wills* 420, §§ 30, 432, 433; *Park* v. *Park*, 9 *Paige* 107; *Jackson* v. *Housel*, 17 *Johns.* 281; *De Kay* v. *Irving*, 5 *Denio* 646; *Prentiss* v. *Doughty*, 3 *Bradf. Sur. R.* 287; *Malcolm* v. *Malcolm*, 3 *Cush.* 472.

2. Heirs are not to be disinherited unless the intent to do so is very clearly expressed. 2 *Jarman* 762, *Rule V;* 1 *Roper* 671; *Leigh* v. *Savidge*, 1 *McCarter* 134.

3. The wife, by this will, was to take a life estate in all the property, with liberty to use up what she needed.

The last words of the third section, "to be and remain as herein directed so long as she remains my widow," qualify the whole estate. The digression after the bequests made, are parenthetic.

Besides, the directions that the hay, straw and manure shall not be sold from off the farm, but be used for its benefit, and that the timber shall be preserved for the good of the estate, show that the testator meant not to devise away his farm longer than for his wife's life. And so does his devise of two-thirds among his heirs.

4. Testator did not mean to vest any part of his estate absolutely in his wife during her life.

The fifth clause is said to pass this absolute estate. But it does not concern one-third of the whole estate, but only of what *may remain* at the time of the wife's death. No article was hers during her life. Nor was the farm hers to convey or to have set off. She could cut no timber, nor sell any hay, straw or manure off from it. Surely, this indicates that testator meant to give her no greater estate than that before.

How could an estate, in what should remain at *her* death, vest during her life? Neither that one-third, or the other two-thirds were determinable till her death. Nor did one vest more than the other.

The phraseology passes all three-thirds to her, one-third for her disposal, two-thirds for division among the heirs, according to her husband's will.

No estate then passing by the will to her except the life estate, the case comes directly under the law cited in the opinion of the court below. The wife made no will, and therefore no "disposal" of the one-third. The life estate ceased at her death, and the heirs take.

It is an express life estate. The two sections give the land, whether she remains a widow or not.

The testator meant this. Full force is given to this part of the will, by holding that it gave the wife the power of disposing of what was left at her death. The testator said, "Let her dispose of the one-third; I dispose of the two-

thirds." His thought was, " I give her all for life. What at her death ? Why, I give her one-third to dispose of then, and I will away two-thirds, she being trustee of it, now, to take effect then." Certainly, the opposite construction is not *clear*. And if not, the heirs should hold.

Later authorities, both in England and this country, lean strongly towards giving force to the intent of the testator, however rudely expressed, in preference to adherence to ancient technical rules.

For the defendant in error, *A. C. McLean* and *F. Kingman*.

The opinion of the court was delivered by

DEPUE, J. The plaintiffs are the heirs-at-law of Lucy Akins, deceased. The defendants make title under the heirs-at-law of the testator, William Akins, deceased. It is too obvious to admit of debate, that Lucy Aikins, under the third clause in the will, would have taken only an estate for life in the whole of the lands whereof her husband died seized. The only real subject matter of controversy, relates to her estate in the one-third part thereof, by force of the fifth clause in the will, which is in the following words, viz. :

" *Fifth*—I also give and bequeath to my beloved wife, Lucy Akins, one-third of all my estate that may remain at the time of her death for to dispose of as she may see proper, and the other two-thirds to be divided as I hereinafter order and direct."

By the succeeding clause, " the balance of the two-thirds " of his estate was devised to the three sisters of the testator, and the heirs of a deceased brother. The contention of the defendant is, that upon the construction of the entire will, Lucy Akins took a life estate only in the lands of the testator, with a power of appointment over the one-third part thereof, and that not having exercised the power, that portion of the testator's estate descended to the defendants as his heirs-at-law, as lands whereof he died intestate.

It will be observed that the estate for life which the widow

became entitled to under the will, in all the lands of the testator which he did not direct to be sold, is not created by express words. It arises from an implication deduced from the fact that her interest therein, is given in general terms without defining or limiting any specific estate. It will also be observed, that the construction contended for, will leave the testator intestate as to the one-third part thereof in question, after the termination of the widow's life estate.

The Supreme Court, in the judgment under review, sustained the claim of an estate in fee in Lucy Akins in the one-third part of the premises, on the rule of construction, that a devise of an estate generally with a power to dispose of the same without qualification or limitation, imports such dominion over the property as that an estate in fee is created. The distinction is between a devise expressly for life with a power of disposition annexed, and a devise in general terms with such a power annexed. In the former case, an estate for life only passes, in the latter a fee. As a rule of construction, the principle is entirely settled, that where lands are devised in the first instance in language indeterminate as to the quantity of the estate from which an estate for life would result by implication, and words adapted to the creation of a power of disposal without restriction as to the mode of execution are added, the construction will be, that an' estate in fee is given; but where the quantity of the estate of the taker is expressly defined to be for life, the superadded words will be construed to be the mere gift of a power of disposition. The leading English authorities sustaining this distinction, are cited by the Chief Justice in his opinion in the court below.

The general rule is, that when a will devises to a man with a power to give a fee, he is construed to have a fee, subject to the qualification that he has not an express estate divided from the power. 2 *Preston on Estates* 82. "We may lay it down as an incontrovertible rule," says Chancellor Kent in *Jackson* v. *Robbins*, 16 *Johns.* 537, 538, "that where an estate is given to a person generally or indefinitely with a power of disposition, it carries a fee, and the only exception to the

rule is, where the testator gives an estate for life only by certain and express words, and annexes to it a power of disposal, in that particular and special case, the devisee for life will not take an estate in fee." The cases are collected and commented on in 1 *Sugden on Powers* 120, *et seq.* ; 8 *Vin. Abr.* 234, *tit. Devises W a ; 6 Bac. Abr., tit. Legacies and Devises (C)*; 2 *Preston on Estates* 81 ; 1 *Roper on Legacies* 642, *et seq.* ; 4 *Kent* 319, 535; 2 *Washburn on Real Prop.* 373.

This rule of construction has been repeatedly approved by the courts of this state. It was made the ground of decision by Chancellor Vroom in *The Dutch Church* v. *Smock, Saxton* 148, and by Chancellor Green in *Annin* v. *Van Doren's Adm'rs,* 1 *McCarter* 135; and was recognized by Chief Justice Hornblower in *Den* v. *Humphreys,* 1 *Harr.* 28 ; by Justices Nevius and Carpenter in *Armstrong* v. *Kent,* 1 *Zab.* 519, 522; and by Chief Justice Green in *Den* v. *Young,* 3 *Zab.* 481, as an established rule of ·construction. In the Dutch Church *v.* Smock, the bequest was to the wife, of " the sum of six hundred dollars, to be at her disposal during life ;" and it was held that she took an absolute interest in the legacy, and not merely a life estate with a power of disposition during life. In Annin *v.* Van Doren's Adm'rs, a testator gave to his daughters the residue of the proceeds of his real estate, including all his rights and credits after payment of his debts, and directed that his executors should take charge of a certain farm belonging to his estate and lease it during the life of his son, and on his death, should sell the same, and the proceeds of such sale he directed to be divided among his daughters and the children of his son, equally, to them and their heirs. By a subsequent clause, he provided that in case either of his daughters died leaving no lawful issue, the share of such daughter, if not paid over by his executors, and if paid over, such part thereof as remained unexpended, should go to his surviving children and their heirs, equally. One of the daughters having received her share of the funds from the father's executors, died without issue, leaving a part of her share unexpended, in the hand

of her agent. On a bill filed to determine the true construction of the bequest to the daughters, it was held that the unlimited power of expenditure given to the daughters during life, was tantamount to a gift of so much as remained undisposed of, and implied absolute ownership; and that, therefore, the gift was absolute in the first taker, and the limitation over was void.

The opinion of Mr. Justice Randolph, in this court, in *Kent* v. *Armstrong*, 2 *Halst. Ch. R.* 637, has not been overlooked. The devise there was to E. R., "to be by her possessed, enjoyed, and occupied, to her, her heirs and assigns, forever," with a proviso that if she "should die without heirs, and *intestate*, then over." The learned judge throws out an intimation that superadded words, conferring a power of disposition, will be construed to give a mere power, not only where the estate for life is given by express words, but also where the life estate arises by necessary implication or from a construction of the will. None of the cases cited support that position; on the contrary, they, with entire unanimity, recognize· and sustain the distinction between the gift of an estate for life by express words, and a gift in general terms, omitting the words of inheritance, by which an estate for life is created by implication or construction. It did not, probably, occur to·the learned judge, at the moment, that his modification of the rule of construction, the existence of which he admits, would, in a great measure, if not entirely, subvert the rule as applied to devises of lands. Be that as it may, the judgment of this court, in the case referred to, was not based on that ground, but upon the other ground that the word "intestate" did not import an unqualified power of disposition, but was restrictive in the sense that the disposition contemplated by the testator could only be made by a testamentary disposition, and that, therefore, the gift was of a mere power.

It was contended on the argument, that the words, "that may remain at the time of her death, to dispose of as she may see proper," import a power of disposition over the

lands by will only, which would bring this case within the decision of the court in Armstrong v. Kent. I do not so construe this language. The gift to the widow, in the third clause of the will, included personal property which would be worn out or expended in the use, as well as real estate. The words, "that may remain at her death," naturally refer to such personal estate, and, as we have seen, imply such a power of disposition over it as to give the absolute property in personalty. *The Dutch Church* v. *Smock, Annin* v. *Van Doren's Adm'rs*, cited above.

In this connection, the counsel referred to that part of the will which forbids the removal of hay or straw from the farm, and expresses the wish that the timber should be preserved for the benefit of the estate, as indicating the testator's intention that the farm should be kept entire during the widow's life. Hence, it was argued that her power of disposition over the one-third was limited to a disposition by will. Conceding that these special provisions manifest an intent on the part of the testator, that the widow should occupy and improve the entire farm during her lifetime, they cannot be permitted to qualify or abridge the generality of the language in which the right of disposition is expressed, especially when that construction will leave the testator intestate as to this part of his property after the death of the widow, whereas it is apparent, from the whole will, that a complete testamentary disposition of all his property was intended.

If any doubt were entertained of the correctness of the construction adopted by the Supreme Court, it would be removed by the statute, which, in substance, prescribes, as a rule of construction, that every devise of lands, in general terms, when no further devise thereof is made after the death of the devisee, shall be taken to be a devise in fee simple, unless the will contains some expression, from which it shall appear that such devise was intended to give only an estate for life. *Nix. Dig.* 1035, § 39.*  There is no devise over of the ultimate fee in the one-third, after the termination of the life estate of the

* *Rev.*, p. 1035, § 13.

Downey v. Borden.

widow in the entire estate, although the other two-thirds are expressly limited over to other persons after her death. Under these circumstances, a devise in fee of the one-third would be created, by the preceding words of gift, by force of the statute referred to. *Den* v. *Snitcher*, 2 *Green* 54. This effect must must be given to the preceding words of devise, unless the generality of the gift is qualified by other expressions in the will, from which it shall appear, affirmatively, that the intention was to give an estate for life only. No such intention can be gathered from the face of this will. On the contrary, the language used by the testator in making this devise, is such as, by established rules, is taken to create a fee.

The judgment of the Supreme Court should be affirmed.

Judgment of the Supreme Court unanimously affirmed.